NOTICE
Decision filed 03/26/15. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2015 IL App (5th) 140170

NO. 5-14-0170

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| SHARI TERADA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 12-L-458 |
| | ) | |
| ELI LILLY AND COMPANY and LORI | ) | |
| TRENTACOSTI, | ) | Honorable |
| | ) | Vincent J. Lopinot, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE STEWART delivered the judgment of the court, with opinion.
Justices Goldenhersh and Schwarm concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Shari Terada, filed a five-count complaint against the defendants, Eli Lilly and Company (Lilly) and Lori Trentacosti, alleging claims of discrimination, retaliatory discharge, and defamation. The circuit court of St. Clair County granted the defendants' motion to transfer venue to Jackson County based on improper venue, and the plaintiff filed this interlocutory appeal. For the following reasons, we reverse and remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3     In her complaint, the plaintiff alleges that, from 2000 until her discharge on

December 15, 2011, she was employed by Lilly as a sales representative, selling diabetic methods of treatment to doctors in several southern Illinois counties, including St. Clair County. She alleges that Lilly unlawfully discriminated against her based on her age, national origin, and sexual orientation. The alleged unlawful discrimination includes, but is not limited to: terminating her employment; conducting human resources investigations into her work conduct; wrongfully accusing her of violating company policy; giving her a low evaluation rating without basis; treating her differently than other persons outside her protected class groups in that her 30-year-old heterosexual supervisor refused to drive with her on sales calls, refused to be with her on certain occasions, and refused to cooperate, assist, and promote her work as a salesperson; refusing to investigate, discipline, and/or terminate other employees not in her protected group classifications for their violations of work policies; ordering her not to talk to Pat Benac, a former employee who was contemplating an age discrimination suit against Lilly; and ordering her not to talk to her former manager, Bruce Killough. She also alleges that Lilly retaliated against her for making discrimination complaints and for helping a former employee with his possible discrimination suit against Lilly in the following ways: failing to investigate discrimination complaints; failing to investigate, discipline, or terminate younger workers who were violating company rules and policies; telling her not to talk to Benac; refusing to investigate her allegation that she was being falsely accused and terminating her instead; treating her differently than other employees who were not members of her protected class; falsely accusing her of violating company rules; failing to properly investigate said allegations; improperly investigating her for false allegations; ordering

2

her not to talk to any individuals about discrimination, violations of work rules, or possible discrimination suits; giving her a low evaluation rating with no basis; and terminating her. She brought these claims under both the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 2012)) (count I) and the Missouri Human Rights Act (Mo. Rev. Stat. § 213.010 *et seq.* (2000)) (count V).

¶ 4 The plaintiff also alleges that she was investigated under false pretenses and terminated in retaliation for whistleblowing in that she reported to management that coworkers were engaging in improper and unethical conduct in violation of a 2009 corporate integrity agreement between Lilly and the United States government through the Office of the Inspector General. Specifically, she reported that salespersons were falsely representing that they were making in-person contacts with doctors, as required by the corporate integrity agreement, when, in fact, they were not. She brought both a common law whistleblowing claim (count III) and a claim under the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2012)) (count IV).

¶ 5 Finally, the plaintiff alleges that Trentacosti, an independent contractor patient educator for Lilly, defamed her by intentionally making false statements to third parties, including employees of Lilly, which resulted in her termination (count II). The false statements Trentacosti allegedly made included the following: (1) the plaintiff promoted Byetta off label for weight loss in a July 12, 2011, program to educate doctors; (2) the plaintiff called Trentacosti before the program and told her to promote Tradjenta; (3) the plaintiff told Trentacosti several times that she could take Trentacosti out to lunch or dinner, pay for it, and not tell anyone, even though that is against company policy; and

3

(4) the plaintiff told Trentacosti that she could take Trentacosti down to Tunica, Mississippi, and take her on a shopping spree.

¶ 6    The defendants filed a joint motion to transfer for improper venue, pursuant to section 2-101 of the Code of Civil Procedure (735 ILCS 5/2-101 (West 2012)). The defendants first argued that venue was improper in St. Clair County because they were not residents of that county. Trentacosti resides in Jackson County. Lilly has no office in St. Clair County and argued that it was not doing business in that county. Lilly argued that its residence was Cook County, the location of its registered agent. Therefore, the defendants argued that the plaintiff's case should be transferred to Cook or Jackson County. The defendants also argued that the only connection the plaintiff and the complaint had to St. Clair County was that she sometimes worked in that county.

¶ 7    The defendants also argued that the transaction prong of the venue statute did not apply because all of the alleged acts and omissions underlying the plaintiff's claims occurred in either Jackson County, Illinois; Missouri; or Indiana. More specifically, they alleged that the plaintiff and her supervisor, Christopher Farr, lived in Missouri, and Lori Morris, Lilly's human resources consultant, who investigated complaints against the plaintiff, was located in Indiana. The defendants argued that Farr and Morris made the decision to terminate the plaintiff in Indiana and communicated that decision to her via a letter from Morris in Indiana. Attached to the motion were several affidavits in support.

¶ 8    In his affidavit, Farr states as follows. He resides in St. Louis, Missouri, and is employed as a district manager for Lilly. His district covers parts of Illinois, Missouri, and Arkansas. As district manager, he oversees 12 sales territories, each of which has 1

4

sales representative. Eight sales representatives work in Missouri, two work in Illinois, and two work in Arkansas. The plaintiff was one of the sales representatives he directly supervised. The plaintiff lives in Missouri, but her sales territory was in Illinois. Her territory forms a rough triangle from East St. Louis east to Centralia, south to Carbondale, and back along the Mississippi River to East St. Louis. The territory does not go north of Interstate 70 or east of Interstate 57. Because both he and the plaintiff live in Missouri, most of his interactions with her occurred while he was in Missouri, and she was frequently in Missouri with him. For example: district sales meetings occurred in Missouri; he conducted her interim review in Missouri, in person; he wrote her evaluation from Missouri; he helped investigate complaints she made about other employees from Missouri; he coached her from Missouri; and when she was ultimately terminated, they were scheduled to participate in a telephone call that he would have taken from Missouri. The only times he interacted with her in Illinois were during routine field rides, which he conducted with each of his sales representatives once every couple of months. He was involved in the decision to discharge her, and his involvement was via telephone calls that he made while located in Missouri.

¶ 9 In her affidavit, Morris states as follows. She resides in Indiana and is employed as a human resources consultant for Lilly. She was in Indiana during all of the events described in her affidavit. On November 4, 2011, Lilly received an anonymous complaint on its ethics hotline regarding the plaintiff, a Lilly sales representative. The individuals who answer the ethics hotline calls are located in Oregon. The ethics complaint was referred to Morris, and she investigated the allegations. During her

5

investigation, she interviewed several people, including Trentacosti, an independent contractor patient educator for Lilly, and the plaintiff. Farr participated in the telephone interview of the plaintiff. After her investigation, Morris concluded that the plaintiff engaged in misconduct through her promotion practices and by not being forthright during the investigation. Misconduct is grounds for immediate termination at Lilly. Based on the investigation's conclusions, Farr and Morris, in consultation with others, decided to terminate the plaintiff. The plaintiff was scheduled to speak to Farr and Morris via telephone on December 15, 2011, but failed to join two calls and failed to contact them by the end of the day. Accordingly, Morris communicated the termination decision to the plaintiff via a letter sent from Indiana to the plaintiff's home address in Missouri.

¶ 10    In Trentacosti's affidavit, she states as follows. She lives in Carbondale, Illinois, and works as a clinical dietitian at the Center for Medical Arts, which is also in Carbondale. She also provides patient educator services as an independent contractor for Lilly. She is not a Lilly employee. As a Lilly patient educator, she provides programs to patients who have been prescribed Lilly drugs for a particular disease, usually diabetes. The programs provide information to patients about their disease and training about how to administer and store their prescription drugs. Trentacosti conducted Lilly patient education programs at various medical providers' offices in Carbondale, Murphysboro, DuQuoin, Harrisburg, and Marion, Illinois, which are located in Jackson, Perry, Saline, and Williamson Counties, respectively. She has never conducted a patient educator program in St. Clair County. As a Lilly patient educator, she often interacts with Lilly

6

employees, including Lilly sales representatives who are promoting the products about which she educates patients. One Lilly sales representative with whom she interacted was the plaintiff. She did not interact with the plaintiff in St. Clair County. In the summer of 2011, she observed the plaintiff engaging in conduct and making statements that she believed violated Lilly's policies. These activities and statements occurred in Carbondale and Murphysboro. Because she was concerned that the plaintiff's statements and offers might reflect poorly on her, she reported them to Lilly's ethics hotline and asked that she not see the plaintiff anymore. She was later contacted by Morris, a Lilly employee, who discussed her report with her. All statements that she made about the plaintiff, including the ethics complaint and investigation interviews, were made while she was in Carbondale.

¶ 11 In his affidavit, John A. Abbott states as follows. He is employed as a consultant for Lilly's incentives and business reporting department. Between December 2011 and November 2012, total prescriptions in St. Clair County zip codes constitute 0.02% of Lilly's total prescriptions filled nationally. As of July 1, 2012, 0.40% of Lilly's national sales force, including sales representatives and sales managers, was associated with St. Clair County zip codes.

¶ 12 The plaintiff filed a response to the defendants' motion to transfer for improper venue, arguing that the transaction prong of the venue statute applied to render venue in St. Clair County proper. Attached to the response was the plaintiff's affidavit, in which she stated as follows.

¶ 13 She was employed by Lilly as a sales representative from 2000 until December 15,

2011. The majority of her sales territory from June 2010 to December 15, 2011, included St. Clair County. Her work performance was judged on her sales performance in St. Clair County.

¶ 14   In 2011, Lilly conducted human resources investigations into her work conduct. During one such investigation in late August 2011, she was interviewed via telephone conference. She and her immediate supervisor, Farr, were physically located across a table from each other in front of a speakerphone in a St. Clair County hotel while Morris, Lilly's human resources consultant, was on the telephone in Indiana. Both Farr and Morris interviewed her. Disciplinary action was taken against her after this interview. During this telephone conference, Morris told her not to talk to Benac, a former coworker who was contemplating filing a discrimination claim against Lilly.

¶ 15   Farr supervised the plaintiff doing her job in St. Clair County. Farr treated her differently than her coworkers based on her age, national origin, and sexual orientation. In particular, in order to observe his subordinates' sales practices and to review their job performance, Farr would ride in the sales representatives' cars with them while they were performing their sales calls to doctors' offices and then evaluate their work performance at the doctors' offices and to and from the doctors' offices. Farr, however, treated her differently in that he refused to ride with her in her car and, instead, followed her in his car and met her at the destinations for her sales calls. The majority of her sales calls occurred in St. Clair County because that was the largest part of her sales territory. One of the diabetes sales representatives with whom Farr would ride in the car to evaluate her job performance was Kelli Goetten. Goetten's sales territory also included St. Clair

8

County. Because Goetten and the plaintiff were on the diabetes sales team that covered St. Clair County, they worked closely together.

¶ 16 During the telephone conference call referenced above, the plaintiff reported to Farr and Morris that Lilly salespersons were falsely representing that they were making in-person contacts with doctors, when, in fact, they were not. This was contrary to the 2009 corporate integrity agreement between Lilly and the United States government. One of the Lilly employees who was falsely representing that she was making in-person contacts with doctors was Goetten. Some of Goetten's improper actions occurred in St. Clair County with St. Clair County healthcare providers.

¶ 17 After hearing argument on the motion, the circuit court granted the defendants' motion to transfer the case based on improper venue and transferred the case to Jackson County. The plaintiff filed a timely petition for leave to appeal, pursuant to Illinois Supreme Court Rule 306(a)(4) (eff. Feb. 16, 2011), which this court granted.

¶ 18                                    ANALYSIS

¶ 19 On appeal, the plaintiff argues that the circuit court of St. Clair County erred in granting the defendants' motion to transfer this case to Jackson County based on improper venue. We agree.

¶ 20 "The determination of proper statutory venue raises separate questions of fact and law because it necessarily requires a trial court to rule on the legal effect of its factual findings." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 153-54 (2005). "We will not disturb a trial court's findings of fact unless those findings are against the manifest weight of the evidence." *Id.* at 154. "After reviewing the trial court's factual findings, we review

9

the legal effect of the trial court's conclusions *de novo*." *Id.* at 155. Where, as here, there is no dispute concerning the facts relied upon by the court, a *de novo* standard of review is proper. *Id.* at 153.

¶ 21 It is the defendants' burden to prove that the plaintiff's venue selection was improper. *Id.* at 155. In doing so, the defendants must provide specific facts, not conclusions, and demonstrate a clear right to the relief requested. *Id.*

¶ 22 Section 2-101 of the Code of Civil Procedure (the Code) provides, in pertinent part, as follows: "Except as otherwise provided in this Act, every action must be commenced (1) in the county of residence of any defendant *** or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2012).

¶ 23 The sole issue before us is whether venue is proper in St. Clair County under the second prong of section 2-101 of the Code, which is referred to as the transactional prong. Determining whether venue is proper under the transactional prong requires us to consider two key variables: the nature of the cause of action and the place where the cause of action springs into existence. *Boxdorfer v. DaimlerChrysler Corp.*, 339 Ill. App. 3d 335, 344 (2003).

¶ 24 The second factor in determining transactional venue–where the cause of action springs into existence–considers, among other things, where " 'any significant negotiations were carried on between the parties, where an agreement was signed, the place where it was, or was supposed to be performed, or where matters occurred that plaintiff has the burden of proving.' " *Williams v. Illinois State Scholarship Comm'n*, 139

10

Ill. 2d 24, 68 (1990) (quoting *People ex rel. Carpentier v. Lange*, 8 Ill. 2d 437, 441 (1956)).

¶ 25    In order to establish a *prima facie* case of retaliation under the Illinois Human Rights Act, a plaintiff must prove that (1) she was engaged in a protected activity; (2) the employer committed a material adverse action against her (*i.e.*, fired her); and (3) a causal nexus existed between the protected activity and the adverse act.  *Hoffelt v. Department of Human Rights*, 367 Ill. App. 3d 628, 634 (2006).  Similarly, to establish a *prima facie* case of employment discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action (*i.e.*, she was fired); and (4) the employer treated similarly situated employees outside the class more favorably.  *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 919 (2010).  Finally, to maintain a retaliatory discharge claim, a plaintiff must prove that (1) she was terminated from employment; (2) the discharge was in retaliation for her activities; and (3) the discharge violates a clear mandate of public policy.  *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 31.

¶ 26    Accordingly, in this discrimination, retaliation, and retaliatory discharge case, the plaintiff not only has to prove that she was fired by Lilly, but also that the underlying acts of discrimination, retaliation, and whistleblowing were the reasons for her termination, thus rendering her termination illegal.  It is those factual details that occurred in St. Clair County.

¶ 27    For example, one element of the plaintiff's discrimination claim is that she was

11

meeting her employer's legitimate business expectations. Because most of her work for Lilly was performed in St. Clair County, whether she was meeting her employer's legitimate business expectations would involve her work performance in St. Clair County.

¶ 28    In addition, the plaintiff alleged that the unlawful discrimination included the fact that Lilly conducted human resources investigations into her work conduct. This investigation relates not only to the plaintiff's work performance (an element of her discrimination claim) but also to her claim that Lilly was retaliating against her by conducting the investigation. The plaintiff was interviewed during one of these investigations by her immediate supervisor, Farr, and by Lilly's human resources consultant, Morris, in late August 2011. This interview was by telephone conference. During this interview, the plaintiff and Farr were physically located across a table from each other in front of a speakerphone at a hotel in St. Clair County while Morris was in Indiana.

¶ 29    The plaintiff also alleged that Lilly retaliated against her for assisting a former employee who was contemplating a discrimination suit against Lilly. Morris told the plaintiff not to talk to this former employee when she and Farr interviewed the plaintiff in the August 2011 investigation, during which the plaintiff and Farr were physically located in St. Clair County.

¶ 30    The plaintiff also alleged that the unlawful discrimination included the fact that her supervisor, Farr, a 30-year-old heterosexual, treated her differently than other persons outside of her protected class groups in that he refused to ride with her on sales calls. He

12

would ride with other subordinates in their cars while they were performing their sales calls to doctors' offices and then evaluate their work performance at the doctors' offices and to and from the doctors' offices. He refused to ride with the plaintiff in her car and, instead, would follow her in his car and meet her at the destinations for her sales calls in order to evaluate her. The majority of the plaintiff's sales calls occurred in St. Clair County because that was the largest part of her sales territory. Moreover, one of the subordinates with whom Farr would ride in the car was Goetten, another sales representative whose territory included St. Clair County. Farr rode in the car with Goetten in St. Clair County in order to evaluate her performance.

¶ 31    The plaintiff also alleged that she was terminated in retaliation for whistleblowing in that she reported to management that coworkers were engaging in improper and unethical conduct in violation of the corporate integrity agreement between Lilly and the United States government. In particular, the plaintiff alleged that she reported that salespersons were falsely representing that they were making in-person contacts with doctors, as required by the corporate integrity agreement, when, in fact, they were not. One of the occasions when the plaintiff reported this improper and unethical conduct was when Farr and Morris interviewed her in the August 2011 investigation, during which she and Farr were physically located in St. Clair County.

¶ 32    In addition, the improper and unethical conduct of employees that the plaintiff reported to management actually occurred in St. Clair County. One of the employees who engaged in this conduct and whom the plaintiff reported to management was Goetten, the other sales representative in the St. Clair County territory. Thus, some of

Goetten's alleged improper and unethical conduct occurred in St. Clair County.

¶ 33   In summary, there is a multitude of acts that occurred in St. Clair County from which the plaintiff's causes of action for discrimination, retaliation, and retaliatory discharge arose: (1) the plaintiff actually worked for Lilly in St. Clair County; (2) the plaintiff and her supervisor were in St. Clair County when she was interviewed during an investigation of her work conduct by Lilly's human resources consultant; (3) the plaintiff was in St. Clair County when Lilly's human resources consultant told her not to talk to a former coworker about that coworker's own possible discrimination suit against Lilly; (4) the plaintiff's supervisor treated her differently in St. Clair County than other coworkers outside of her protected class groups, and at least one of these coworkers also worked in St. Clair County; (5) while she was physically located in St. Clair County, the plaintiff reported to Lilly's human resources consultant that Lilly's salespersons were engaging in improper conduct; and (6) some of the improper conduct that the plaintiff reported to Lilly actually occurred in St. Clair County in that they involved Lilly's salesperson's interactions with doctors and healthcare providers in St. Clair County.   All of these actions constitute part of the discrimination and retaliation against the plaintiff, culminating in her termination from employment.

¶ 34   With the exception of where the termination itself occurred, the defendants ignore what facts the plaintiff must prove to support the elements of her claims.  Instead, the defendants focus on the facts related to their defenses of those claims, namely, that Trentacosti made statements against the plaintiff to Lilly through a hotline and that Lilly performed an investigation in Indiana of the plaintiff's conduct as a result of those

14

statements and fired her as a consequence of that investigation. Those alleged facts are the basis of the defendants' defense as to why the plaintiff was terminated. The facts of the defendants' defense, however, are not relevant to whether venue is improper. The plaintiff can choose a venue based only on the facts and elements of the causes of action that she has to prove. The defendants ignore the plaintiff's allegations that her termination was not due to an investigation of her conduct but rather because of discrimination and retaliation. As in any employment termination case, there are fundamental differences between the parties as to why the plaintiff was terminated. However, the facts on which to base the determination of improper venue are those that the plaintiff has to prove, not those that the defendant will argue in defense of the plaintiff's claims.

¶ 35 The purpose of the venue statute is "to protect a defendant from having to defend a lawsuit in a county with 'little or no relation to the defendant or the transaction that is the subject of the lawsuit.' " *Kaiser v. Doll-Pollard*, 398 Ill. App. 3d 652, 662 (2010) (quoting *Jackson v. Reid*, 363 Ill. App. 3d 271, 278 (2006)). Based on the facts set out above, it can hardly be said that St. Clair County has little or no relation to this case. The defendants argue (without any facts in support) that St. Clair County was just part of the plaintiff's sales territory and that it was not the bulk of her sales territory. However, in her affidavit, the plaintiff stated: "The majority of my sales calls took place in St. Clair County since that was the largest part of my sales territory." She was not referring to geographical size, but rather the size of the population of healthcare providers to whom she was making sales calls. The affidavits submitted by the defendants said nothing

15

about what portion of the plaintiff's sales calls occurred in St. Clair County.

¶ 36   Based on the nature of this case–an employment discrimination and retaliation case where the majority of the plaintiff's work for defendant Lilly was performed in St. Clair County and where some of the illegal discriminatory and retaliatory conduct allegedly committed by Lilly, which forms the factual basis of the plaintiff's complaint, occurred in St. Clair County–the defendants did not satisfy their burden of proving that the plaintiff's selection of venue in St. Clair County was improper.  Accordingly, the trial court erred in granting the defendants' motion to transfer venue to Jackson County.

¶ 37                            CONCLUSION

¶ 38   For the foregoing reasons, we reverse the order of the circuit court of St. Clair County granting the defendants' motion to transfer venue to Jackson County and remand for further proceedings consistent with this decision.

¶ 39   Reversed and remanded.

2015 IL App (5th) 140170

NO. 5-14-0170

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| SHARI TERADA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 12-L-458 |
| | ) | |
| ELI LILLY AND COMPANY and LORI | ) | |
| TRENTACOSTI, | ) | Honorable |
| | ) | Vincent J. Lopinot, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

**Opinion Filed:**         March 26, 2015

_____

**Justices:**         Honorable Bruce D. Stewart, J.

                Honorable Richard P. Goldenhersh, J., and
                Honorable S. Gene Schwarm, J.,
                Concur

_____

**Attorney**         Susan M. Andorfer, Susan M. Andorfer, Ltd., 111 West Washington
**for**                 Street, Suite 200, Belleville, IL 62220
**Appellant**

_____

**Attorneys**         Troy A. Bozarth, HeplerBroom LLC, 130 North Main Street,
**for**                 Edwardsville, IL 62025 (for Eli Lilly and Company); T. Christopher
**Appellees**         Bailey, Edward S. Bott, Jr., Kathi L. Chestnut, Greensfelder,
                Hemker & Gale, P.C., 10 South Broadway, 20th Floor, St. Louis, MO
                63102 (for Lori Trentacosti)

_____