2021 IL App (2d) 200579-U
No. 2-20-0579
Order filed December 9, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| YUMING HUANG, | ) ) | On Petition for Administrative Review from the Illinois Human Rights Commission. |
|     Petitioner-Appellant, | ) ) | |
| v. | ) | Charge No. 2018-CF-2775 |
| | ) ) | |
| THE HUMAN RIGHTS COMMISSION, THE DEPARTMENT OF HUMAN RIGHTS, and AT&T SERVICES, INC., | ) ) ) ) | |
|     Respondents-Appellees. | ) | |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Bridges and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1   *Held*: The Commission's order sustaining the dismissal of petitioner's harassment, discrimination, and retaliation claims is affirmed.

¶ 2   *Pro se* petitioner, Yuming Huang, appeals the Human Rights Commission's order sustaining the Department of Human Rights' order dismissing, for lack of substantial evidence, petitioner's claims that his employer, AT&T Services, Inc., engaged in racial harassment and

discrimination against him and retaliated against him after he engaged in protected activity.[1] For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In March 2018, AT&T notified petitioner that it was terminating his employment as a senior member of its technical staff.

¶ 5    In June 2018, petitioner filed with the Department a charge alleging four counts of employment discrimination and retaliation against AT&T.  First, petitioner, who is Asian, alleged that from "early 2017" through April 30, 2018, he was harassed by his non-Asian supervisor, Raymond Egler, who "constantly" criticized petitioner's work quality and quantity, creating a hostile work environment that impacted petitioner's ability to do his job.  Second, petitioner alleged that Egler's harassment closely followed petitioner's engagement in protected activity, raising an inference of retaliation.  Specifically, petitioner claimed that he engaged in protected activity when, (1) in March 2008, he filed a discrimination charge against AT&T; and (2) on October 6, 2017, he filed an internal discrimination complaint against Egler.  Third, petitioner charged AT&T with race discrimination in its decision to terminate him.  Petitioner noted that he had been employed since July 31, 2000, and his performance met AT&T's expectations.  He asserted that, on March 1, 2018, Egler notified him that he would be laid off effective April 30, 2018, because his position was being eliminated; however, petitioner asserted that similarly situated non-Asian employees were not laid off.  Finally, petitioner alleged that he was terminated

---

[1] Although, on appeal, AT&T filed an appearance and requested multiple extensions of time to file an appellee brief, which were granted, it never did so.

in retaliation for having opposed discrimination on the two occasions described above (*i.e.*, the March 2008, charge with the Department and an October 2017, internal complaint against Egler).

¶ 6    In November 2019, the Department initially dismissed petitioner's charges for a lack of substantial evidence and issued an accompanying investigation report. In January 2020, petitioner requested that the Commission review the dismissal. Apparently, he attached certain documents, namely, emails, to that request. In response, the Department requested that the Commission remand the matter for further investigation. Accordingly, on February 5, 2020, the Commission reinstated and remanded petitioner's charges to the Department for further investigation. We will refer to this 2020 request for review and remand as the "first" request for review.

¶ 7    In March 2020, after conducting additional investigation, the Department again dismissed petitioner's charges. It prepared an addendum to its initial, 2019 report, summarizing its findings and conclusions, and noted that the 2020 addendum report should be read in conjunction with the initial report.

¶ 8    In June 2020, petitioner requested that the Commission review the Department's 2020 dismissal of his charges (*i.e.*, the second request for review). We note that the second request for review received a Commission case number that was different from the first request; in other words, it was not filed as a continuation of the first request and was treated as a separate process. The request-for-review form again instructed petitioner to specifically describe the reasons that the charges should not have been dismissed. Further, it again noted that he could attach additional information or documents in support of his request. This time, petitioner attached only a one-page document, summarizing two reasons why he believed the charges should not have been dismissed. First, although it is not entirely clear, it appears he questioned how his performance rating in 2017 compared with that of an individual who had been discharged in December 2017, suggesting that,

if his rating was the same in 2017 and 2018, yet he was not laid off in 2017, Egler might have changed his 2018 rating to justify termination. Second, petitioner asserted that he had provided specific and substantial evidence to support his claims with his *first* request for review (received by the Commission in January 2020), but the investigator's March 2020 report rejected that evidence without any specific rebuttal.

¶ 9       The Department filed a response, in sum, explaining that, as opposed to racial harassment, discrimination, or retaliation, its investigation revealed only that AT&T had periodically corrected petitioner's work performance and, for financial reasons, eliminated petitioner's position after determining that he had the lowest ranking based on performance, leadership, skills, and experience. The Department included with its response the addendum investigation report, but no exhibits or attachments that are referenced in that report.

¶ 10      In his reply, petitioner (1) noted that his performance rankings decreased from 2015 through 2018, when Egler was his supervisor; (2) asserted that Egler was unhappy with petitioner's accent; (3) argued that written evidence and emails submitted with his first request for review proved the discrimination and harassment; and (4) questioned his 2018 performance rankings, as compared with the 2017 rankings.

¶ 11      On September 28, 2020, the Commission sustained the Department's dismissal of petitioner's charges. The Commission noted that petitioner alleged that, on one or two occasions in early 2017, Egler laughed at petitioner's accent and once mimicked petitioner on the phone. Further, petitioner stated that Egler criticized his work performance in a meeting, gave him additional work, even after he told Egler he was experiencing health issues due to work stress, and that Egler did not respond to petitioner's requests for work assistance. The Commission found that, although on October 6, 2017, petitioner emailed Raj Savoor, complaining that Egler's

supervision humiliated him and detailing specific incidents that petitioner believed were harassing, the email "did not mention any protected class discrimination; it did say that [p]etitioner believed Egler's conduct was in retaliation, but did not say what Egler was retaliating against him for." Further, during the Department's investigation, petitioner did not recount any incidents of harassment after the October 6, 2017, email. As for petitioner's termination in March 2018, the Commission noted that he was the only member of his five-person team who was laid off; of the four remaining members of his team, one was Asian and three were non-Asian. However, four other persons (outside of his team) were terminated at the same time as petitioner, one of whom was Asian and three who were non-Asian. The evidence reflected that AT&T provided the Department with the performance scores assigned to all members of petitioner's team, and petitioner had received the lowest score. Further, at the time of his layoff, petitioner was given two months to apply for other positions within AT&T; he applied to 12 positions but was not hired. However, of those 12 positions, 5 were "cancelled" and never filled, while 3 of the remaining 7 positions were filled by Asian applicants.

¶ 12     Therefore, based upon the Department's investigation report, the Commission sustained the Department's findings that petitioner's claims lacked substantial evidence. The Commission found that petitioner failed to establish a *prima facie* case of unlawful harassment, discrimination, or retaliation. First, as to harassment, it acknowledged that the two 2017 incidents petitioner identified (Egler's laughing at and mimicking petitioner's accent) contained a racial connection, but noted that, to be actionable, racial harassment requires more than a few isolated comments. Indeed, the other incidents that petitioner characterized as harassment reflected only work-related critiques or disputes, lacking connection to his protected class, and, therefore, were not actionable. The Commission noted, "[p]etitioner provided emails between he and Egler with his *initial*

Request [for review], and nothing in these emails constitutes actionable racial harassment." (Emphasis added.).

¶ 13     With respect to petitioner's claim that AT&T terminated him on account of his race, the Commission determined that petitioner failed to provide substantial evidence to establish that a similarly situated, non-Asian employee was treated more favorably.     Instead, the evidence demonstrated that petitioner was not the only Asian member of his team, and the one other Asian member received the second-highest score in evaluations and was not terminated.     Further, four other employees (outside of the team) were laid off at the same time as petitioner, and three of those terminated were non-Asian.

¶ 14     Finally, as to his claims that he was harassed and terminated in retaliation for protected activity, the Commission found that petitioner failed to provide substantial evidence that the alleged harassment was an actionable adverse action; the October 2017 email was protected activity, as it did not complain about unlawful discrimination; or the March 2008 charge of discrimination, which would constitute protected activity, held any causal connection to his alleged harassment or termination almost 10 years later.     Petitioner appeals.

¶ 15                                   II. ANALYSIS

¶ 16                       A. Petitioner's Arguments and Standards of Review

¶ 17     On appeal, petitioner argues that the Commission erred in sustaining the dismissal of his charges.     He argues that the Commission erred in concluding that there were only two incidents of harassment, which were insufficient to be actionable, and he instead asserts that Egler subjected him to harassment and unfair treatment from 2016 to 2018.     Petitioner explains that, initially, Egler did not like his accent and, then, a hostile work environment developed when petitioner "fought back" and complained about unfair treatment.     For example, petitioner lists two times in October

2016, when Egler blamed him for work errors and petitioner "fought back" and proved he did nothing wrong. He lists eight occasions in 2017, when Egler believed that petitioner was responsible for certain errors or work mishaps, "harassed" petitioner about them, petitioner "fought back," and then, when petitioner suffered health issues, Egler assigned him extra work instead of reducing his responsibilities. As for retaliation, petitioner explains that, in October 2017, he reported Egler's conduct in an email he sent to Savoor "to complain about racial discrimination, harassment, and retaliation." Also, he filed a charge in 2008 and, with respect to the 10 years that passed between his 2008 charge and his termination, petitioner asserts that AT&T had "long memories and was vindictive." Petitioner notes that he was rated as a "key employee" in 2015, and his annual performance reviews in 2016 and 2017 acknowledged that he met performance expectations or had a "meaningful impact." In less than three years, however, he was rated "bottom," and AT&T has not explained how that happened. With respect to the Asian employees who were not terminated, petitioner comments that the difference between him and them is that he opposed racial discrimination. Accordingly, petitioner contends that his March 2018 termination was retaliatory, and he asks that we vacate the dismissal of his charges and reinstate them for further investigation.

¶ 18    The Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq*. (West 2018)) prohibits discrimination against a person on the basis of his or her race. *Id*. §§ 1-102(A); 1-103(Q). In addition, the Act prohibits retaliation against an individual because he or she has opposed unlawful discrimination or has made a charge or complaint or participated in an investigation under the Act. *Id*. § 6-101(A). When a person files a charge alleging discrimination or retaliation under the Act, the Department must conduct a full investigation of the allegations and prepare a written report. *Id*. §§ 7A-102(C)(1), (D)(1). The Department must determine whether there is "substantial

evidence" that the alleged violation(s) occurred. *Id*. § 7A-102(D)(2). "Substantial evidence" is "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id*. § 7A-102(D)(2). If the Department determines that there is no substantial evidence to support the allegation, the charge is dismissed. *Id.* § 7A-102(D)(3).

¶ 19    The petitioner may seek review by the Commission of the dismissal. *Id.* The request may be accompanied by argument and supporting materials. 775 ILCS 5/8-103(B) (West 2018); see also 56 Ill. Admin. Code § 5300.410. Further, here, the Commission's instructions for the request for review provided that, absent permission, the request, argument, and supporting materials shall not exceed 30 pages and, further:

> "In the space provided, you must list and describe the specific reasons that the charge should not have been dismissed. If appliable, you may write on the back of this form or attach additional information or documents, which support your Request for Review. *You may review your investigation file* to help you prepare your request by calling (312) [***-****] or (217) [***-****]. The Department's investigation file may be *reviewed or copied* upon request once the Department's investigation has been completed. The Department is not responsible for copy service fees. A minimum of three (3) business days' notice is required. Call (312) [***-****] to make arrangements."

¶ 20    The Department may then file a response, which:

> " ***shall consist of the following:
>
> 1) a copy of the Charge, including amendments.
>
> 2) the Department's *investigation report*.
>
> 3) results of additional [Department] investigation, if any.

4) a statement of [Department]'s position, including proposed findings to support dismissal." (Emphasis added.) 56 Ill. Admin. Code § 5300.430.

Thereafter, the petitioner may file a reply. *Id.* § 5300.440.

¶ 21 In its review, the Commission may consider the Department's report, any argument and "supplemental evidence submitted," and the results of any additional investigation the Department conducts in response to the request for review. 775 ILCS 5/8-103(B) (West 2018). "When considering whether there is substantial evidence to support a charge, the Commission is not to resolve credibility issues or questions of fact." *Marinelli v. Human Rights Comm'n*, 262 Ill. App. 3d 247, 253 (1994). Rather, the Commission must adopt the Department's factual findings unless they are against the manifest weight of the evidence. See *id.* If the Commission ultimately sustains the dismissal, the petitioner may seek direct administrative review in the appellate court. *Id.* § 8-111(B)(1); *Allen v. Lieberman*, 359 Ill. App. 3d 1170, 1180 (2005).

¶ 22 We review the decision of the Commission, not the Department. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact are entitled to deference and "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018); see *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 314 (1998). The Commission's decision to sustain the dismissal of a charge will be reversed only where the decision was arbitrary and capricious or an abuse of discretion. See *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). A decision is arbitrary and capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offers an explanation so implausible that it cannot be considered as a result of the exercise of the agency's expertise. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33. Under this standard, a reviewing court may not reweigh

evidence or substitute its judgment for that of the Commission. *Id.* Rather, an abuse of discretion will be found only where no reasonable person could agree with the Commission's decision.[2] *Id.*

¶ 23                              B. The Appellate Record

¶ 24    Before addressing the merits of this appeal, we choose to comment on the state of the record. Specifically, petitioner appealed to this court in October 2020, and, in December 2020, the Commission submitted the administrative record. Thereafter, petitioner twice moved to supplement the record with documents that he alleged were received by the Commission but were missing. Petitioner identified the missing documents as: (1) 30 pages of evidence that he asserted were electronically filed with the Department in March 2019 (*i.e.*, during the Department's first investigation of the charges) and received by the Commission in January 2020 (*i.e.*, when petitioner filed his first request for review); (2) the Department's January 2020 response to his review request (*i.e.*, where it requested the Commission to remand for further investigation); and (3) the Commission's February 2020 remand order. In other words, petitioner wished to supplement the record with documents concerning his first request for review. Although he identified documents in his motions to this court, petitioner did not attach them; rather, he attached only the cover page of his initial request for review and a notice of filing of the request for review, as well as only the first page reflecting certain other documents were filed.

¶ 25    Initially, on January 5, 2021, this court granted petitioner's motions. However, the Commission moved us to reconsider, arguing that, because the documents from the first request

_____

[2] We note that the arbitrary-and-capricious and abuse-of-discretion standards are viewed as equivalents. See *ManorCare Health Services, LLC v. Illinois Health Facilities & Services Review Board*, 2016 IL App (2d) 151214, ¶ 21.

for review were not in the record for petitioner's *second* request for review, which led to the decision at issue on appeal, we should not consider documents the Commission did not review in rendering its decision. The Commission represented that the record before us was complete because it included all documents it considered in entering its final administrative decision. On January 13, 2021, we granted the Commission's motion to reconsider. Petitioner moved us to reconsider, pointing out that Illinois Supreme Court Rule 335(d) (eff. July 1, 2017) provides that the "entire record before the administrative agency shall be the record on review,"[3] and essentially arguing that the entire record here consists of all documents before the Department and Commission that led to the initial dismissal, the remand for more investigation, the second dismissal, and the Commission's order affirming the dismissal. On January 21, 2021, we denied petitioner's motion to reconsider.

¶ 26    Setting aside the documents that were the subject of plaintiff's ultimately-denied motions, our consideration of the parties' substantive appellate arguments raised for this court new questions

---

[3] Rule 335(d) provides in full:

"(d) The Record. The entire record before the administrative agency shall be the record on review unless the agency and the petitioner stipulate to omit portions. Omitted portions shall be transmitted to the Appellate Court at any time on the request of the agency, the petitioner or any other party, which request shall be served on all parties, or on order of the court. The record shall be filed with the Appellate Court and shall contain, be arranged, prepared numbered, and certified as required for the record on appeal under Rules 321 through 325 and the Standards and Requirements for Electronic Filing the Record on Appeal." Ill. Sup. Ct. R. 335 (d) (eff. July 1, 2017).

about the record. Specifically, certain documents referenced within the Commission's order (including an email from the first request for review) and which underly the Department's and Commission's findings are not in the record. As such, on November 9, 2021, to be certain that we received the full administrative record, we entered the following order:

"On the court's own motion, respondent Illinois Human Rights Commission shall submit a supplement to the record containing any documents explicitly referenced in its September 28, 2020, decision (for example, including, but not limited to, emails), any other documents submitted for its review, and any other documents upon which it relied. Further, as the Commission reviewed the Department of Human Rights' addendum report, which referenced 10 exhibits purportedly attached to that report, those exhibits shall also be submitted. The supplements to the record shall be submitted within 14 days of this order."

¶ 27 The Commission has now moved this court to reconsider our *sua sponte* order. Specifically, the Commission represents that the documents our order identifies were either *not* part of the administrative record that it considered or it has already provided the entire record. It explains that certain documents are not part of the record because: (1) petitioner submitted no additional materials, such as the exhibits to the investigative and addendum reports, with his request for review; and (2) the documents were not among the materials that the Department is required to transmit to the Commission. Indeed, the Commission notes that, although its order references certain emails between petitioner and his employer, the Department "does not" (suggesting a routine procedure) provide those original documents to the Commission with its response. "The references to emails in the Commission's decision are therefore based on the summaries of the evidence in the Department's reports. So, the Commission did not review the emails themselves when deciding the second request for review[.]" Similarly, as to the 10 exhibits

that were purportedly attached to the addendum report, the Commission again represents it did not receive or review those exhibits in making its decision. "While the Department's investigative report lists the exhibits that were attached to the report when it was reviewed by the Department's Director, those exhibits are not among the materials that [petitioner] and the Department sent to the Commission in connection with the second request for review." The Commission notes again that petitioner could have attached relevant documents in support of his request for review, as he did in his first request for review, but that he did not do so.

¶ 28    Given the Commission's representations in its motion, we grant its motion to reconsider our November 9, 2021, order. We have apparently received all documents that the Commission had before it when deciding the issues and rendering its decision. On administrative review, we are limited to considering the record that was before the agency and cannot consider new or additional evidence; therefore, it would be improper for us to order the Commission to obtain documents from the Department that it did not possess during its review and to submit them to this court. See, *e.g.*, *Deen v. Lustig*, 337 Ill. App. 3d 294, 304-05 (2003).

¶ 29    We note that the administrative framework here effectively permits the Commission to base its review and ultimate findings on the *Department's* summary of what the evidence showed, not necessarily through independent inspection of the underlying evidence. From our perspective, this is somewhat troubling, as it is our obligation to review the Commission's decision under the manifest-weight-of-the-evidence standard. Yet, the applicable statutes and regulations do not appear to require the Department to transmit underlying evidence to the Commission. Although one might expect that, where the Department is required to submit to the Commission its "investigation report," the exhibits referenced therein and attached to that report would be included (for example, we generally deem exhibits attached to a complaint, referenced therein, as being part

of the complaint. *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 33 (Exhibits attached to the complaint, incorporated by reference, are part of the complaint)). Nevertheless, it appears that there is no *requirement* that, in its response, the Department attach supporting evidence to its report, and the regulations do not define "investigation report." Rather, as noted, when listing what must be included with the Department's response, the regulations require only the "investigation report" (56 Ill. Admin. Code § 5300.430) and the statute mentions only the "report" (775 ILCS 5/8-103(B) (West 2018)). See, *e.g.*, *Cannon v. Illinois Human Rights Comm'n*, 2021 IL App (3d) 190280-U, ¶ 25 ("There is no requirement to include the full investigative file, or the exhibits referenced in the Department's report."). Moreover, again, it is the *petitioner's* burden to establish his case (see *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79 (1989)). Indeed, it appears that the Commission *must* adopt the Department's factual findings unless the petitioner, in the request for review and through supplemental evidence, if appropriate, demonstrates those findings are against the manifest weight of the evidence. See *Marinelli*, 262 Ill. App. 3d at 253. The Act allowed the petitioner here to submit any evidence that he believed the Commission should have considered for its review of his claims of error (775 ILCS 5/8-103(B) (West 2018)), and while not detailed in the statutes and regulations, the Commission's instructions to the request for review specifically explained that petitioner could: submit documents with his request; arrange to access all documents in the Department's investigative file; and make copies of evidence in the file that he wished to have the Commission consider. As the Commission points out, petitioner attached documentary support to his first request for review, but did not follow those procedures with the second request for review.

¶ 30     Technicalities aside, we note that it is not wholly unreasonable for a *pro se* petitioner to presume, albeit incorrectly, that the record from an initial request for review would be part of the

administrative record for a second request for review based on the same charges. Apparently, the Commission treats each review request as a separate case number and proceeding, and the records are not merged. Yet, the first review request resulted in a remand for additional investigation; that additional investigation resulted in the report that gave rise to the second request for review. Further, the Department's addendum report specifies that it should be read along with the initial report (which was the subject of the first request for review), and the Commission's decision on the second request for review references emails that petitioner submitted with his first request for review. As such, it seems to us that the second report and request for review could be considered a continuation of the first report and request for review, such that the administrative record would include both, but it is not for us to decide or comment on the Commission's case management processes. In the end, to the extent that petitioner submitted documents with his first request for review, that evidence was apparently served upon the Department with the petitioner's request and before it agreed in its response to a remand. Therefore, the documents were presumably incorporated into the additional investigation and encompassed in the addendum report and findings.

¶ 31    In sum, given the various burdens, requirements, and case management processes at play here, the record before us is apparently complete.

¶ 32                          C. Racial Harassment

¶ 33    We turn now to the merits of this appeal. Addressing first petitioner's claim of racial harassment, the Commission found that petitioner failed to present substantial evidence of actionable harassment. To establish a racial-harassment claim, the petition must provide substantial evidence that the employer's conduct was so severe and pervasive that it altered the terms and conditions of the petitioner's employment and created an abusive working environment.

See *Village of Bellwood Board of Fire & Police Commissioners v. Human Rights Comm'n*, 184 Ill. App. 3d 339, 350 (1989). "Racial harassment has been defined to include a steady barrage of opprobrious racial comment. [Citation.] More than a few isolated incidents of harassment, however, must have occurred; racial comments that are merely part of casual conversation, are accidental, or are sporadic do not trigger civil rights protective measures." *Id.* "[O]ffhand comments, isolated incident[s,] and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840-41 (7th Cir. 2009).

¶ 34    Here, the Department and Commission found that petitioner identified roughly two incidents where Egler laughed at petitioner's accent and mocked him. While the incidents related to petitioner's race, they were isolated incidents and not a "steady barrage" of racial harassment. *Village of Bellwood*, 184 Ill. App. 3d at 350. Although petitioner claimed that Egler harassed him on other occasions, those incidents concerned work-performance issues, as opposed to petitioner's race. Indeed, in his opening brief, petitioner points to eight incidents of alleged harassment (which it appears he did not identify below and is improperly raising for the first time on appeal), but all concern Egler purportedly misidentifying petitioner as being responsible for perceived work errors or mishaps and petitioner "fighting back." He provides similar, non-racially-connected examples in his reply brief. None describe racial comments or constitute substantial evidence that the incidents were racially motivated.

¶ 35    Although petitioner claims that emails submitted with his first request for review established racial harassment, the Department and Commission found that those emails did not concern his race. The Commission noted in its order, "[p]etitioner provided emails between he and Egler with his initial Request [for review], and *nothing in these emails constitutes actionable*

*racial harassment*." (Emphasis added.) On appeal, petitioner notes that the emails are not in the record and that we denied his motion to supplement the record, in part, on the basis that documents he referenced were purportedly not before the Commission during its review of the second request. At the same time, however, he points out that the Commission's order explicitly references and relies upon an email and, so, he contends, "either the record is incomplete or the order is wrong." Not necessarily. As we discussed above, the record is not incomplete. Further, the Commission was familiar with the relevant documents, as petitioner's claims previously came before the Commission during petitioner's first request for review and the evidence was discussed in the Department's first investigative report (which, in turn, was incorporated into its second report). Again, when, after the Department's second decision dismissing his claims, petitioner filed a second request for review, he did not attach documents to support his claims of error, although the instructions provided that he could do so. Thus, it could be true both that the emails were not in the record before the Commission during the second review request *and* that the Commission was aware of their contents for purposes of addressing petitioner's claims. In any event, the Commission's order reflects that it considered documents that petitioner asserts support his claims, but it found that they did not establish racial harassment. Our review of the Commission's factual findings is not *de novo*; rather, we consider them with deference and assess only whether they were contrary to the manifest weight of the evidence. See, *e.g.*, *Stone*, 299 Ill. App. 3d at 314. Here, petitioner did not rebut the Department's findings that the emails did not mention race. Indeed, *even on appeal*, petitioner identifies only two isolated incidents of comments relating to race. Petitioner describes only in conclusory fashion that the emails support his claims, but he does not describe with any specificity exactly what they said or how they established race harassment, so as to rebut the Department's and Commission's findings. As such, we cannot conclude that the

Commission's finding that petitioner did not provide substantial evidence of actionable racial *harassment* was contrary to the manifest weight of the evidence or, ultimately, that dismissal of his claims was an abuse of discretion.

¶ 36                                D. Racial Discrimination

¶ 37    With respect to his termination, the Commission did not abuse its discretion in finding that petitioner did not present substantial evidence of employment discrimination based upon race. In cases involving employment discrimination under the Act, Illinois courts have adopted the analytical framework used for addressing Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq*. (2012)) and other federal statutes. See *Zaderaka v. Human Rights Comm'n*, 131 Ill. 2d 172, 178 (1989). Within this framework, a plaintiff can prove discrimination through direct evidence or through an indirect method of proof. See *Lalvani v. Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). For the indirect method, at issue here, courts use the analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Specifically, petitioner here bore the initial burden of proving, by a preponderance of the evidence, a *prima facie* case of unlawful discrimination. *Illinois Bell Telephone Co. v. Illinois Human Rights Comm'n*, 190 Ill. App. 3d 1036, 1048 (1989). As his claim concerns his termination, to establish a *prima facie* case, petitioner must show by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he was performing satisfactorily; (3) despite the adequacy of his work, he was discharged; and (4) a similarly situated employee who was not a member of the protected group was not discharged. See *Owens v. Department of Human Rights*, 356 Ill. App. 3d 46, 52 (2005). Once a petitioner establishes a *prima facie* case, "the employer must articulate, not prove, a legitimate, nondiscriminatory basis for its action." *Id.* The burden then shifts back to the petitioner to prove by a preponderance of the evidence that the employer's articulated reason was not true

and was a pretext for unlawful discrimination. *Id.* A petitioner's failure "to present substantial evidence of a *prima facie* discrimination claim or to disprove an employer's articulated reason for discharge warrants dismissal of the charge." *Id.*

¶ 38    Here, the Commission found that petitioner did not present substantial evidence of a *prima facie* claim because he did not establish that similarly situated non-Asian employees were treated more favorably. Specifically, the Department's investigation revealed that petitioner was not the only Asian member of his team; the other Asian team member received the second-highest score in evaluations and was *not* terminated. Further, four other employees (outside of the team) were laid off at the same time as petitioner, and three of those terminated employees were non-Asian. Petitioner did not present evidence during the second review request to establish that the Department's findings were incorrect. On appeal, petitioner vaguely asserts that the difference between him and the non-terminated Asian team member is that he chose to oppose discrimination. In addition to lacking support, this explanation does nothing to rebut the evidence that non-Asian employees were also terminated at the same time. Nor has petitioner put forth evidence that, for example, a non-Asian employee who had a lower performance score than him was not terminated, which is not what the evidence demonstrated.

¶ 39                                  E. Retaliation

¶ 40    Finally, with respect to petitioner's retaliation claims, the Commission did not abuse its discretion in determining that petitioner failed to establish that the alleged racial harassment or termination decisions were retaliatory. To prove a *prima facie* case of retaliation under the Act, a plaintiff must prove that (1) he or she was engaged in statutorily-protected activity; (2) the employer committed an adverse act against him or her; and (3) a causal connection existed between

the protected activity and the adverse act. *Terada v. Eli Lilly & Co.*, 2015 IL App (5th) 140170, ¶ 25.

¶ 41    Preliminarily, with respect to the requirement of demonstrating an adverse action, while petitioner's termination is clearly an adverse action, the Commission correctly found that petitioner did not establish racial harassment and, thus, the alleged harassment cannot serve as an additional adverse action.   Moreover, the Commission's finding that petitioner did not establish a nexus between the alleged adverse action and protected activity is not contrary to the manifest weight of the evidence.   Specifically, as noted, both the Department and Commission found that the 2017 email to Savoor did not mention racial harassment.   Petitioner has not presented evidence to rebut this finding.    Thus, because petitioner complained only generally of harassment or unfair treatment, petitioner's 2017 email complaining about Egler did not constitute protected activity. Although protected activity includes internal complaints to managers or other appropriate persons (see *Burks v. Wisconsin Department of Transportation*, 464 F.3d 744, 758 (7th Cir. 2006)), the substance of the complaint must be sufficient to notify the employer that the petitioner reasonably believes that prohibited discrimination has occurred.   See *Skiba v. Illinois Central R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018).   "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

¶ 42    Moreover, although the Commission agreed that petitioner's 2008 discrimination charge against his employer would constitute protected activity, it properly concluded that petitioner did not provide substantial evidence of a causal connection between that activity and his termination 10 years later.   Indeed, as the Commission notes, an extended temporal proximity between the

protected activity and adverse action precludes a finding of causality. See, *e.g.*, *Clark City School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (20-month lapse between alleged protected activity and adverse action insufficient to infer causal connection); see also *Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1115 (7th Cir. 1992) (causal connection "discount[ed]" on account of three-year lapse between protected activity and adverse action). Petitioner's assertion on appeal that the *10-year* period is not an issue because AT&T has a long memory and is vindictive constitutes unsupported speculation, not evidence. See, *e.g.*, *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999) (speculation and conjecture does not constitute substantial evidence). In sum, without more, petitioner's 2008 alleged protected activity is too remote from his termination to constitute substantial evidence of retaliation.

¶ 43                                    III. CONCLUSION

¶ 44     The decision of the Commission sustaining the Department's dismissal of petitioner's charges for lack of substantial evidence was not an abuse of discretion. We affirm.

¶ 45     Affirmed.