2022 IL App (1st) 211155-U

No. 1-21-1155

Order filed September 8, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ZSOCH DUNN, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission |
| v. | ) | |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | Charge No. 2020 CP 1131 |
| DEPARTMENT OF HUMAN RIGHTS, and PACE | ) | |
| SUBURBAN BUS SERVICES, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE MARTIN delivered the judgment of the court.
Justices Reyes and Rochford concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm the decision of the Human Rights Commission sustaining the Department of Human Rights' dismissal of petitioner's charges of discrimination in public accommodation based on a lack of substantial evidence.

¶ 2   Petitioner Zsoch Dunn appeals *pro se* from a final decision of the Human Rights

Commission (Commission) sustaining the Department of Human Rights' (Department) dismissal

of his charges of discrimination in public accommodation for lack of substantial evidence. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4    On October 4, 2019, petitioner filed a *pro se* charge of discrimination in public accommodation, alleging that Pace Suburban Bus Services (Pace) denied him full and equal enjoyment of its services on April 9, 2019, due to (1) his Pacific-Islander race, (2) male sex, (3) Moorish-American ancestry, (4) light completion, (5) American citizenship, and (6) mental and physical disabilities. Specifically, petitioner alleges a bus driver failed to secure medical attention for him after the bus in which he rode was involved in an automobile accident. Petitioner further alleged that he was denied the full and equal enjoyment of Pace's services in September 2019, due to his race, sex, ancestry, color, citizenship status, mental and physical disabilities, and in retaliation for a previous complaint when a bus driver asked petitioner to give his disabled seat to a wheelchair-bound passenger and permitted other passengers to taunt him after he initially declined. The charge was perfected on December 11, 2019.

¶ 5    The Department investigated the charge. An investigator reviewed documents and interviewed petitioner, Pace senior staff attorney Christopher Lyons, and bus driver Noe Garcia. The Department issued an investigation report on October 7, 2020.

¶ 6    The report detailed that petitioner told the investigator that he was diagnosed with seizure disorder in 1999, schizophrenia in 2000, and fractured hip disorder arising from a beating on September 23, 2017. Petitioner used Pace's buses between March 2019 and October 2019.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 7    On April 9, 2019, petitioner was on a Pace bus, driven by a non-Pacific Islander, light-complected man. Petitioner believed that the bus driver was aware of his Moorish-American ancestry because of his headwear and knew of his disabilities due to his cane. The bus driver was "hurrying," and the bus was then struck on the front driver's side mirror. Petitioner, who was standing, "blacked out" when his body was thrown. Following the accident, the bus driver had the passengers complete index cards "to get a claim paid for further care and treatment." Petitioner requested a first aid kit, but the driver said he did not have one. According to petitioner, he was denied the first aid kit because he was "abused through coercion" by Pace's "corporate people." Additionally, Pace's "non-compliance law officer" accused petitioner of "being at fault." Petitioner did not request an ambulance, and no police or ambulances arrived. Petitioner later contacted police because the driver wanted to "bend the rules" and state the bus was stopped when it was hit. However, the emergency operator "hung up." He continued to use Pace following this incident.

¶ 8    The investigator reviewed verification of disability forms provided by petitioner. Petitioner signed the forms but did not answer the questions on them. Although petitioner submitted medical records, none stated that petitioner's ailments resulted from the April 9, 2019, incident.

¶ 9    Regarding the September 2019 occurrence, petitioner was unsure of the exact date of incidence. Petitioner initially stated that he did not remember the bus driver's badge number. According to the report, petitioner submitted a photograph of the alleged driver, but the driver's badge number was not visible. In a footnote, the report stated that petitioner "clarified" that the badge number was "3180." Petitioner stated that a bus driver asked him to surrender his disabled seat to a passenger in a wheelchair. Initially, petitioner declined because there were no other open

seats. However, after the driver threatened to call the police and treated him "discourteously," and other passengers "loudly" told him to move, he moved, under duress. Petitioner stated that non-disabled passengers were not denied the use and enjoyment of Pace's services and that the September 2019 action followed his involvement in a protected activity, that is, his complaint that he was discriminated against on April 9, 2019.

¶ 10    Lyons stated that there were no criteria to access Pace services other than a fare. Pace had a harassment, discrimination, and anti-retaliation policy that applied to employees and passengers, and Lyons provided a copy during the investigation. No one at Pace was aware of petitioner's race, sex, ancestry, color, citizenship, or disabilities prior to this charge.

¶ 11    Lyons stated that Pace's accident protocol required bus drivers to stop the bus, notify dispatch, assess aid for passengers, and contact police and medical personnel if necessary. The bus driver completes an accident report form, exchanges information with the other driver, and gives passengers courtesy cards to gather their information. Pace supplied a copy of "A Professional Bus Operator Handbook: Accident Reporting Procedures," which outlined these procedures.

¶ 12    On April 9, 2019, the bus could not continue service after the accident because a mirror, considered essential safety equipment, was damaged. Lyons was unaware of any injuries associated with the accident. About a week later, Pace received a "complaint" from petitioner, and he was directed to accident claims staff. The claim was denied because petitioner failed to provide requested medical documents.

¶ 13    As detailed in the order from the Commission, PACE buses are equipped to serve customers in wheelchairs or mobility devices and have a designated seating area. If other passengers are using those seats, the bus driver will "politely" ask them to move. Lyons only

learned of the September 2019 incident when petitioner called Pace on September 30, 2019. However, it was "difficult" to determine the "essence" of the complaint, and, although the complaint referenced September 14, 2019, without further details, the bus driver at issue could not be identified.[2]

¶ 14    Garcia, the bus driver involved in the April 9, 2019, accident, was unfamiliar with petitioner, and did not recall petitioner using a cane or speaking with him prior to the accident. The bus was stopped at a bus stop when an SUV hit the bus's side mirror. Garcia did not believe there was a "transfer of motion" from the impact to the passengers and no one screamed. At that time, petitioner was standing to the side between the first seat and the driver's area. After Garcia reported the accident on the radio, police officers arrived and took his statement. He informed the passengers that they would need to board a different bus. No one reported injuries or requested medical attention. Garcia stated that petitioner did not look "hurt" and denied that petitioner requested a first aid kit, medical attention, or an ambulance. Around 45 minutes after the accident, petitioner was the only passenger remaining and Garcia recommended that he board the next bus. Garcia had not seen petitioner since the accident.

¶ 15    The investigator reviewed Pace reports regarding the accident, which stated that the bus was stopped when it was "sideswiped" by an SUV and the driver's side mirror was damaged. On the report, a section regarding medical assistance for passengers stated "not applicable" and the word "none" was checked in the injuries section. Petitioner was listed as a witness. A Chicago police report characterized the incident as "no injury/drive away." On his "Passenger Courtesy

---

[2]The report notes that although an interview was requested with the bus driver assigned badge number 3180, this individual was on "extended leave" and had no "specified return date."

Card," petitioner marked "yes" to the question was anyone hurt, but his handwritten comment was illegible.

¶ 16     In rebuttal, petitioner stated that Garcia initiated conversation with him and that he used his cane on April 9, 2019. The force of the accident was "capsizing," caused the driver's side window to shatter, and "everyone" screamed. Regarding the September 2019 incident, petitioner asserted that the bus driver had no "priority" reason to ask him to move.

¶ 17     The investigator recommended a finding of lack of substantial evidence of discrimination and concluded that petitioner was not denied the full and equal enjoyment of Pace's services. While petitioner was on a bus that experienced an accident on April 9, 2019, no injuries were reported and the damage to the bus was "minimal." Moreover, petitioner did not identify, and the investigation did not reveal, any passenger treated more favorably under similar circumstances. Additionally, no evidence showed that petitioner was denied service by Pace. As to the September 2019 incident, petitioner did not identify, and the investigation did not reveal, a passenger treated more favorably under the circumstances. Rather, bus drivers were to ask passengers sitting in designated wheelchair seating to move when a wheelchair-bound patron entered the bus.

¶ 18     On October 30, 2020, the Department dismissed defendant's charge based on a lack of substantial evidence.

¶ 19     On January 22, 2021, petitioner filed a *pro se* request for review, alleging that witnesses lied, spoliation of evidence, "error of law," "wanton malice," and that he was being punished for "exposing [an] abuse of power." The Department filed a response recommending that the dismissal be sustained.

¶ 20    On August 31, 2021, the Commission sustained the dismissal of petitioner's charge for lack of substantial evidence. The Commission explained that regarding the April 9, 2019, accident petitioner failed to establish a *prima facie* case of discrimination concerning a public accommodation when no evidence established that petitioner was denied service by Pace, and he continued using Pace's services following the accident. Additionally, the bus driver acted in accordance with Pace policy and petitioner did not identify anyone treated more favorably under the circumstances or otherwise provide evidence of pretext. The Commission also noted petitioner failed to establish that he was disabled within the meaning of the Illinois Human Rights Act (Act) (775 ILCS 5/1-103(I) (West 2018)), when he submitted disability verification forms bearing his signature but failed to answer any questions on the forms.

¶ 21    Regarding the September 2019 incident, the Commission found petitioner failed to establish a *prima facie* case of discrimination concerning a public accommodation when petitioner was not denied service, being asked to move from designated disability seating when a disabled passenger required it was a Pace "practice," and petitioner did not identify anyone treated more favorably under similar circumstances. Moreover, petitioner failed to establish a *prima facie* case of retaliation when there was no adverse action and no evidence that the bus driver knew of petitioner's protected activity. The Commission finally noted that petitioner's argument in support of reversal was "incoherent," and therefore insufficient to warrant reversal.

¶ 22    Petitioner filed a timely petition for direct review in this court on September 21, 2021. See 775 ILCS 5/8-111(B)(1) (West 2018) (a petitioner may "obtain judicial review of a final order of the Commission *** by filing a petition for review in the Appellate Court within 35 days from the date that a copy of the decision *** was served upon the party affected").

¶ 23                                    II. ANALYSIS

¶ 24     In his *pro se* brief, petitioner asserts that the dismissal of his charge of discrimination was an abuse of discretion and shielded Pace from liability. He further argues that Pace withheld and destroyed evidence and that he suffered physical injuries as a result of the accident.

¶ 25     As a preliminary matter, our review of petitioner's appeal is hindered by his failure to fully comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), which "governs the form and content of appellate briefs." *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. Although petitioner is a *pro se* litigant, this status does not lessen his burden on appeal. "In Illinois, parties choosing to represent themselves without a lawyer must comply with the same rules and are held to the same standards as licensed attorneys." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. Rule 341(h) provides that an appellant's brief should contain a statement of "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment," and an argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(6), (7) (eff. Oct. 1, 2020). Pursuant to the rule, a reviewing court is entitled to have issues clearly defined with "cohesive arguments" presented and pertinent authority cited. *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993).

¶ 26     Here, petitioner's brief provides no citations to the record and fails to articulate a legal argument which would allow a meaningful review of his claims. An appellant is required to cite to the pages and volumes of the record on appeal upon which he relies "so that we are able to assess whether the facts [which the appellant] presents are accurate and a fair portrayal of the events in this case." *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 58; see also Ill. S. Ct.

R. 341(h)(7) (eff. Oct. 1, 2020). In the case at bar, petitioner's 84-page brief addresses the Department's decision, but also insurance fraud, sexual harassment, medical billing and debt collection, police misconduct, consumer fraud, and whistleblower protection. In sum, there is no organized or cohesive argument. See *People v. Hood*, 210 Ill. App. 3d 743, 746 (1991) ("A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research."). "Arguments that do not comply with Rule 341(h)(7) do not merit consideration on appeal and may be rejected by this court for that reason alone." *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 43.

¶ 27 Considering the content of petitioner's brief, it would be within our discretion to dismiss the instant appeal. See *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005) ("Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal."). However, because petitioner clearly challenges the dismissal of his charge of discrimination, and we have the benefit of a cogent appellee's brief, we choose to consider the discernible merits of the appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc*., 321 Ill. App. 3d 509, 511 (2001).

¶ 28 The Act provides that it is a civil rights violation for any person, on the basis of unlawful discrimination, to "[d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2018).

¶ 29 Upon the filing of a discrimination charge, the Department must conduct a full investigation of the allegations and prepare a written report. 775 ILCS 5/7A-102(C), (D) (West 2018). The Department must then review the report to determine whether there is "substantial

evidence" that the alleged discrimination occurred. 775 ILCS 5/7A-102(D)(2) (West 2018). Substantial evidence is "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id*.; see also *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999) ("mere speculation and conjecture does not constitute substantial evidence"). If the Department determines that there is no substantial evidence to support the allegation, the charge is dismissed. 775 ILCS 5/7A-102(D)(3) (West 2018). A petitioner may then request the Commission review the Department's determination. *Id*. If the Commission sustains the dismissal, the petitioner may seek review in the appellate court. 775 ILCS 5/8-111(B)(1) (West 2018).

¶ 30     We review the decision of the Commission, rather than that of the Department. *Alcequeire v. Human Rights Comm'n*, 292 Ill. App. 3d 515, 519 (1997). The Commission's findings of fact are entitled to deference and "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018). However, the Commission's ultimate decision to sustain the dismissal of a charge will be reversed only if the decision was arbitrary and capricious or an abuse of discretion. *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 314 (1998). "A decision is arbitrary and capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offers an explanation so implausible that it cannot be considered as a result of the exercise of the agency's expertise." *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33. An abuse of discretion will be found where no reasonable person could agree with the Commission's decision. *Id*. Under this standard, we "may not reweigh the evidence or substitute our judgment for that of the Commission." *Id*.

¶ 31    Here, the Commission sustained the dismissal of petitioner's charge for lack of substantial evidence, as he failed to establish a *prima facie* case of discrimination in public accommodation.

¶ 32    Our supreme court has adopted the three-part test, articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for evaluating charges of discriminatory practices brought under the Act. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 918 (2010) (citing *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79 (1989) (claims under the Act are to be evaluated in accordance with federal decisions interpreting federal antidiscrimination laws)). Under this test, a petitioner alleging a violation of the Act has the initial burden to prove a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Owens*, 403 Ill. App. 3d at 918-19. If the petitioner succeeds in establishing a *prima facie* case, the respondent must articulate, not prove, a legitimate, nondiscriminatory reason for its actions to rebut that presumption. *Id*. at 919. Then, the burden shifts back to the petitioner to prove by a preponderance of the evidence that the respondent's reason was untrue and a pretext for discrimination. *Id.*

¶ 33    The burden of persuasion rests with the petitioner throughout the proceedings (*id*.), and the failure to present substantial evidence of a *prima facie* claim of unlawful discrimination or to disprove a respondent's articulated reason for its actions warrants dismissal of the charge. *Owens v. Department of Human Rights*, 356 Ill. App. 3d 46, 52 (2005).

¶ 34    To establish a *prima facie* case of discrimination in public accommodation, a petitioner "must demonstrate that (1) he is a member of a protected class, (2) he attempted to exercise the right to full benefits and enjoyment of a place of public accommodation, (3) he was denied those benefits and enjoyment, and (4) he was treated less favorably than similarly situated persons

outside his protected class." See *Jackson v. Walgreens Co.*, 2021 IL App (1st) 201261-U, ¶ 28 (citing *McCoy v. Homestead Studio Suites Hotels*, 390 F. Supp. 2d 577, 583-85 (S.D. Tex. 2005)); see also Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021) (nonprecedential Appellate Court orders entered on or after January 1, 2021, may be cited for persuasive purposes). To establish a *prima facie* case of retaliation, there must be substantial evidence that (1) the petitioner engaged in protected activity, (2) the respondent committed an adverse action against the petitioner, and (3) a causal nexus existed between the protected activity and the adverse action. See *Spencer v. Illinois Human Rights Commission*, 2021 Il App (1st) 170026, ¶ 40.

¶ 35     After reviewing the record, we conclude that petitioner has failed to demonstrate that the Commission abused its discretion by sustaining the dismissal of his charge of discrimination for lack of substantial evidence. In this case, the Commission explicitly stated that petitioner failed to establish that he was denied the full and equal enjoyment of Pace's services when he was permitted to use Pace's services and continued to do so following the April and September 2019 incidents. The record does not show otherwise. Moreover, petitioner failed to identify anyone treated more favorably under similar circumstances or otherwise provide evidence of pretext. Additionally, regarding the September 2019 incident, petitioner failed to establish a *prima facie* case of retaliation when there was no adverse action and no evidence that the bus driver knew of petitioner's protected activity.

¶ 36     As petitioner failed to establish a *prima facie* case of unlawful discrimination (*Owens*, 403 Ill. App. 3d at 918-19), dismissal was warranted (*Owens*, 356 Ill. App. 3d at 52). The Commission's decision to sustain the dismissal was therefore not an abuse of discretion. *Stone*, 299 Ill. App. 3d at 314.

¶ 37  Although petitioner argues to the contrary, his arguments are unsupported by authority, do not address the elements required to make a *prima facie* discrimination claim, and fail to explain how the alleged facts of his claim satisfy those elements. Even if this court were to overlook petitioner's conclusory and confusing arguments on appeal, the record does not establish that he was denied the use of Pace's services or was treated less favorably than a similarly situated person outside his protected class. To the contrary, petitioner stated that he continued to use Pace's services until October 2019. Accordingly, we cannot say that no reasonable person could agree with the Commission's decision. See *Young*, 2012 IL App (1st) 112204, ¶ 33. Petitioner's challenge to the Commission's decision therefore fails.

¶ 38                                    III. CONCLUSION

¶ 39  For the reasons explained above, we affirm the decision of the Commission.

¶ 40  Affirmed.