2024 IL App (1st) 230126-U

No. 1-23-0126

Order filed October 22, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JERICO MATIAS CRUZ, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Human Rights |
| | ) | Commission. |
| v. | ) | |
| | ) | Charge No. 2021 CP 2436 |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, | ) | |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS, and | ) | |
| CHICAGO PUBLIC LIBRARY, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirmed. The Illinois Human Rights Commission did not abuse its discretion in upholding the determination of lack of substantial evidence of discrimination.

¶ 2    Petitioner, Jerico Matias Cruz, filed a charge of discrimination with the Illinois Department

of Human Rights (IDHR) pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et*

*seq.* (West 2020)). The charge alleged the Chicago Public Library Albany Park branch (CPL)

discriminated against him based on race, color, national origin, military status, and ancestry. The IDHR dismissed the charge for lack of substantial evidence. Cruz requested a review with the Illinois Human Rights Commission (Commission), which sustained the finding. Cruz filed a direct appeal with this Court. We affirm.

¶ 3     On October 21, 2021, Cruz filed a charge with the IDHR, alleging CPL discriminated against him when it denied him the full and equal enjoyment of the CPL's facility based on his race (Asian), color (light-complexioned), national origin (Philippines), military status (U.S. armed forces veteran), and ancestry (Filipino). For all claims, he alleged that, on or about April 1, 2021, he was at the CPL Albany Park branch and used Zoom to attend a virtual class. He was told to leave for the "given reason" that he was talking too loudly. A security officer called the police, who required him to leave. Cruz argued that, under similar circumstances, the CPL treated differently similarly situated patrons who were not Asian, light-complexioned, from the Philippines, a U.S. armed forces veteran, or Filipino.

¶ 4     The IDHR investigated Cruz's charge and prepared a report dated June 6, 2022. The record reflects that Cruz failed to attend the IDHR's fact-finding conference. As part of its investigation, the IDHR's investigator interviewed Cruz, CPL Branch Manager John Goynn, librarian Rosa Reyes Sanchez, and "HR Business Partner" Chloe Snowden Morgan. The investigator recounted as uncontested facts that Cruz frequented CPL's Albany Park branch, and that on April 27, 2021, police escorted him from the branch.

¶ 5     During the interview, Cruz stated that he visited CPL's public library in Albany Park many times over the years and was "unsure" of CPL's "exact policy" but knew CPL "wanted people to be quiet when using the library." He had enrolled in school and used the library to attend virtual

classes for the spring 2021 semester. On April 27, 2021, he sat in an open space in the Albany Park library and attended a class over Zoom. A CPL employee told him he "was being loud and needed to quiet down." Cruz explained to the employee that he was "in the middle of taking a class," but the employee still expected him to lower his voice and warned him two or three times that he needed to be quiet. The employee then called over a security guard, who threatened to call the police if Cruz did not lower his voice. Cruz again stated he could not quiet down because he was taking a class. The police came and forced him to leave.

¶ 6    Cruz stated that other people in the library were talking loudly. While the others were told to be quiet and asked to leave by a library employee, they never left and CPL staff did not call the police on them. Cruz told the investigator he did not think any library employees were aware of his race, national origin, or ancestry, but he "looked Asian, so they should have known." He stated CPL "should have known" his military status because, when he signed up for a library card, he had to provide his license, which stated he was a veteran, and he sometimes wore a miliary jacket when using the library. Cruz also reported that he subsequently returned to the Albany Park library to use the facility several times.

¶ 7    Sanchez told the investigator she was working at the Albany Park library on April 23, 2021, when Cruz began "yelling and swearing" at his computer and was "disrupting" other library patrons. Sanchez asked Cruz to "quiet down." Cruz responded that he was "in the middle of a class" and "shooed her away." Sanchez left Cruz alone because he eventually lowered his voice.

¶ 8    Sanchez also reported that, on April 27, 2021, Cruz returned to the library and was loud and swearing at his computer again. Another librarian asked Cruz to "quiet down" several times, but Cruz refused. The security guard asked Cruz to leave the library and warned him that the police

would be called if he did not, but Cruz ignored her and continued to "swear and yell." The police were called, and Cruz was removed from the library. A CPL incident report dated April 27, 2021, indicated that Cruz was escorted from the library by police for disorderly conduct after he refused to "quiet down." Afterwards, Cruz continued to be a "regular visitor" and returned to the library several times.

¶ 9    Goynn told the investigator that Cruz frequently visited the Albany Park branch prior to April 2021. The Albany Park branch staff knew Cruz as a "disruptive, combative, and an overall difficult patron." About a week before the complained-of incident, on or about April 20, 2021, Cruz was "being loud and swearing at a laptop." Goynn asked him to "quiet down and watch his language" several times, but Cruz ignored him. Eventually, Goynn asked him to leave. He did not complete an incident report because Cruz's behavior was a "common occurrence," and Cruz usually left when asked.

¶ 10    Goynn stated that the library staff was not aware of Cruz's race, national origin, military status, or ancestry and did not "track the race of patrons." He stated it was "not uncommon" for patrons to be asked to leave the library for being too loud, and the police had been called before to remove a disruptive patron. CPL incident reports dated September and October 2021 indicated two different patrons were removed from the library by police for disorderly conduct.

¶ 11    Morgan told the IDHR's investigator that CPL followed city guidelines regarding an anti-discrimination policy. The City of Chicago Diversity and Equal Employment Opportunity Policy indicated that CPL prohibits discrimination based on race, color, national origin, military status, and ancestry. Morgan also explained that public libraries "were set up to be conducive to learning," and policies existed to "ensure a safe and positive library experience for visitors and staff." The

Library Use Guidelines prohibited visitors from "engaging in disruptive behavior and/or using loud, abusive, or profane language." The Computer and Internet Use Guidelines indicated that CPL had the right to intervene when activities on a personal device cause disruptions to library users or staff and will call the police if necessary.

¶ 12   The IDHR's investigator requested CPL to provide source documentation of any discrimination complaints submitted by Cruz in 2021, but CPL indicated there were none.

¶ 13   The investigator recommended a finding of lack of substantial evidence on all counts. Specifically, the investigator determined that police escorted Cruz from the library for disorderly conduct, as was consistent with CPL's policies. Cruz conceded that he was aware CPL required patrons to be quiet while using the facility and that he was warned several times to "quiet down." Evidence showed that in 2021 police removed two other patrons from the same library for disorderly conduct. The investigator found no evidence of "an animus" or that Cruz was denied full and equal enjoyment of the facility based on his belonging to a protected class, largely because Cruz did not identify, and the investigation did not reveal, any other individual who was treated more favorably under similar circumstances.

¶ 14   The IDHR accepted the investigator's recommendations and dismissed Cruz's charge for lack of substantial evidence.

¶ 15   Cruz filed a request for review with the Commission. As his "argument" supporting his request for review, Cruz argued that he had "substantial evidence on his Exhibits."

¶ 16   Attached to the request for review as an exhibit was an email from Cruz to the IDHR's investigator to "[p]lease see attached documents of my answers to your 'Complainant

Questionnaire' dated on November 6, 2021." The document purportedly attached to the email is not in the record on appeal.

¶ 17    Also attached to the request for review was a letter from the IDHR's investigator informing Cruz that a fact-finding conference was held on May 10, 2022, but Cruz did not attend or explain his absence. The letter requested that Cruz contact the investigator and explain his failure to attend the conference. Cruz further attached an email he sent to the investigator apologizing for not attending the conference, stating he had a "scheduling conflict" and that he launched his political campaign "last month" for the U.S. House of Representatives.

¶ 18    Cruz further attached a document that appears to reflect Cruz's class schedule for the spring 2021 semester at Harry S. Truman College.

¶ 19    The IDHR filed a response to Cruz's request for review, reiterating its findings that its investigation did not reveal substantial evidence supporting Cruz's charge. The IDHR asserted that neither Cruz's request for review nor the attachments to the request were persuasive, as they provided no evidence of CPL's allegedly discriminatory actions.

¶ 20    On December 27, 2022, the Commission entered a final order sustaining the IDHR's dismissal for lack of substantial evidence. The Commission found that Cruz failed to identify similarly situated persons outside his protected class who were not escorted out of the library after refusing the directives of library staff to stop being loud. As a result, no inference was created that he was treated differently because of his protected class. The Commission noted that, while Cruz claimed to have had a justifiable reason for missing the fact-finding conference, his charge was not dismissed for failure to cooperate, but rather for failure to establish a *prima facie* case of unlawful discrimination.

¶ 21 Pursuant to section 8-111(B)(1) of the Act, Cruz timely filed a *pro se* petition for administrative review in this court. See 775 ILCS 5/8–111(B)(1) (West 2022).

¶ 22 On appeal, Cruz seeks reversal of the Commission's decision sustaining the dismissal of his charge. We review the Commission's decision for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under the abuse of discretion standard, we will not reverse the Commission's decision unless it is arbitrary or capricious, meaning "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.* ¶ 33. We will not reweigh the evidence or substitute our judgment for that of the Commission. *Id.*

¶ 23 As a preliminary matter, we agree with the Commission that Cruz arguably forfeited a review of the Commission's decision on the merits. Specifically, Illinois Supreme Court Rule 341(h)(7) requires a brief to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The rule further provides that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 24 Here, Cruz argues that the Commission failed to (i) "properly review" the exhibits attached to his request for review, (ii) "procedurally follow and review" his request for review as provided for under the Act and the administrative code, and (iii) "properly review the *prima facie* evidence and material facts" set forth in his complaint and request for review. But he does not develop any cognizable, substantive argument supported by relevant authority addressing the basis for his

dismissal: his failure to set forth a *prima facie* case of discrimination by identifying a single person of a non-protected class who received more favorable treatment under similar circumstances. But we will put aside forfeit and consider the merits of the appeal, as it is clear that Cruz is challenging the dismissal of his charge, and we have the benefit of the Commission's cogent brief. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (finding meaningful review was not precluded, as merits of underlying appeal could be readily ascertained from record).

¶ 25    Under the Act, the IDHR conducts an investigation and may dismiss a charge of discrimination upon a determination that there is no "substantial evidence" supporting the charge. 775 ILCS 5/7A-102(C), (D)(3) (West 2020). The Act defines "substantial evidence" as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance" of proof. *Id*. § 7A-102(D)(2). "[M]ere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

¶ 26    A complainant may seek review of the IDHR's dismissal of the charge by filing a request for review with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2020). During its review, the Commission "may consider the [IDHR's] report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the [IDHR] in response to the request." *Id*. § 8-103(B). When the Commission sustains the dismissal, the complainant may, as here, seek direct appellate review of the Commission's final determination. *Id*. § 8-111(B)(1).

¶ 27    A complainant may prove discrimination by presenting direct evidence of discrimination, such as proof of a racial slur or a written or oral admission, or through indirect evidence. *Board of*

*Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Here, there was no direct evidence of discrimination, so Cruz was required to establish unlawful discrimination through indirect evidence. To show indirect evidence of discrimination, the complainant bears the initial burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 28    Cruz asserted discrimination premised on the denial of full and equal enjoyment of the CPL facility. Section 5-102(A) of the Act provides that it is a civil rights violation for any person, on the basis of unlawful discrimination, to "[d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2020). A library constitutes a public place of accommodation under the Act. *Id*. § 5-101(A)(9).

¶ 29    The Act defines "unlawful discrimination," in relevant part, as discrimination against a person because of his actual or perceived race, color, national origin, military status, and ancestry. *Id*. § 1-103(Q). To establish a *prima facie* case of discrimination in public accommodation, a complainant must show that (1) "he is a member of a protected class"; (2) "he attempted to exercise the right to full benefits and enjoyment of a place of public accommodation"; (3) "he was denied those benefits and enjoyment"; and (4) "he was treated less favorably than similarly situated persons outside his protected class." (Internal quotation marks omitted.) *Dunn v. Human Rights Comm'n*, 2022 IL App (1st) 211155-U, ¶ 34.

¶ 30    The Commission did not abuse its discretion in finding that Cruz failed to establish a *prima facie* case of unlawful discrimination premised on the CPL's Albany Park branch denying him the

full and equal enjoyment of its facilities on the basis of his race, color, national origin, military status, or ancestry. During the IDHR's investigation of Cruz's charge, Cruz acknowledged that he was removed by police from the library for talking too loudly. He claimed that other patrons at the library were told to quiet down and asked to leave for being loud, but the police were not called to remove those patrons when they remained. But as the Commission noted, Cruz failed to identify that any of these other patrons were outside the protected classes of which he was a member. Because Cruz did not establish that he was "treated less favorably than similarly situated persons outside his protected class," the Commission properly determined that he failed to establish a *prima facie* case of unlawful discrimination. (Internal quotation marks omitted.) *Id.* ¶ 34. We thus find that the Commission's final order sustaining the IDHR's dismissal of his charge for lack of substantial evidence was not an abuse of discretion.

¶ 31    Nonetheless, Cruz argues that the Commission failed to properly review the exhibits attached to his request for review and the "*prima facie* evidence and material facts," and likewise failed to follow the "administrative procedure" of the Act and administrative code. Cruz's vague, speculative, and undeveloped allegations are not enough to overcome the Commission's finding that the IDHR's investigation did not reveal "substantial evidence" supporting his charge. See *Folbert*, 303 Ill. App. 3d at 25. We note that defendant submitted documents as an appendix in this court that are not included in the record on appeal, but we cannot consider facts and evidence not presented to the Commission. See 735 ILCS 5/3-110 (West 2020) ("No new or additional evidence in support of or in opposition to any finding, order, determination, or decision of the administrative agency shall be heard by the court.").

¶ 32    For the foregoing reasons, this court could not possibly find that the Commission acted in an arbitrary or capricious manner in upholding the IDHR's dismissal for lack of substantial evidence.

¶ 33    The final decision of the Commission is affirmed.

¶ 34    Affirmed.