2025 IL App (1st) 240170-U

No. 1-24-0170

Order filed November 18, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JERICO MATIAS CRUZ, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Human Rights |
| | ) | Commission. |
| v. | ) | |
| | ) | Charge No. 2022 CP 2303 |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, | ) | |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS, and | ) | |
| CHICAGO PUBLIC LIBRARY—MAYFAIR BRANCH | ) | |
| LIBRARY, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirmed. Illinois Human Rights Commission did not abuse discretion in upholding determination of lack of substantial evidence of discrimination.

¶ 2    Petitioner, Jerico Matias Cruz, filed a charge of discrimination with the Illinois

Department of Human Rights (IDHR) pursuant to the Illinois Human Rights Act (Act) (775

ILCS 5/1-101 *et seq.* (West 2022)). The charge alleged the Chicago Public Library (CPL)

Mayfair Branch Library discriminated against him based on race, ancestry, national origin, military status, citizenship status, and color. The IDHR dismissed the charge for lack of substantial evidence. Cruz requested review with the Illinois Human Rights Commission (Commission), which sustained the finding. Cruz filed *pro se* a direct appeal with this court. We affirm.

¶ 3    On June 29, 2023, Cruz filed a "corrected" charge of discrimination with the IDHR. In his charge, Cruz alleged CPL discriminated against him on June 14, 2022, when it denied him the full and equal enjoyment of the CPL Mayfair Branch's facility based on his race (Asian), ancestry (Filipino), national origin (Philippines), military status (U.S. armed forces veteran), citizenship status (U.S. citizen), and color (light complexioned). Cruz argued that, under similar circumstances, CPL treated similarly-situated patrons who did not have these characteristics differently.

¶ 4    The IDHR investigated Cruz's charge and prepared a report dated August 24, 2023. As part of its investigation, the IDHR's investigator interviewed Cruz, Librarian Rebecca Berg, District Chief Gregorio Rodriguez, and Human Resources Director Mary Robinson.

¶ 5    During the interview, Cruz stated that he had been a patron of the CPL Mayfair Branch for over 20 years. He did not know whether CPL collected information on the protected categories of its patrons. He also did not know whether CPL was aware of his military status or citizenship status, but he considered himself a public figure and stated his congressional campaign website included information pertaining to his protected categories.

¶ 6    Cruz stated that on June 14, 2022, he visited the CPL Mayfair Branch to use the public computers. While on the computers, he answered a cellphone call and spoke for less than 10

seconds. Security Officer Lacey told Cruz that he was being too loud and could not speak on the phone in the library. Lacey also informed him that he was violating CPL guidelines and needed to leave. Cruz recorded video of the interaction and told Lacey that he was not violating any laws or policies and was " 'not going anywhere.' " CPL's manager called the police, and Cruz waited in the computer lab for the officers to arrive. The police arrived, instructed Cruz to leave, and informed him he would be charged with criminal trespassing if he returned. CPL provided Cruz with a suspension notice and a copy of its guidelines. Cruz then left the facility.

¶ 7    Cruz stated that CPL's security and staff "sometimes allow other non-Asian, non-Filipino, non-Philippines, differently colored patrons to speak on their respective cellular telephones in the computer lab." He was unaware of the names of these patrons and could not provide specific dates on which any of these incidents occurred.

¶ 8    Cruz received a suspension notice, which reflected a 30-day suspension for " 'engaging in disruptive or unsafe behavior including interfering with the use or operations of the library by users or staff' " and for violating a first suspension.

¶ 9    CPL provided the IDHR with its equal employment opportunity policy, which prohibits discrimination based on race, color, national origin, ancestry, and military service, and indicates that CPL follows all applicable federal, state, and local laws and ordinances prohibiting discrimination. Berg told the IDHR that CPL does not maintain information on the protected categories of its patrons, and Berg was unaware of Cruz's protected categories. CPL's library use guidelines indicated that CPL asks patrons to abide by any reasonable request from staff or security to refrain from disorderly or disruptive behavior, and violations of policies or guidelines may result in removal from the facility and/or suspension of library privileges. The guidelines

also ask patrons not to engage in disruptive or unsafe behavior, which includes interfering with the use or operations of the library users or staff, harassing users or staff, or taking photographs or videos of library users without their permission.

¶ 10    CPL also provided "March 29, 2021 - February 2, 2022 Incident Reports," indicating seven incidents in which Cruz was reported speaking loudly on his phone or in the library and, on one occasion, using profanity and racial slurs.

¶ 11    Berg told the IDHR that on June 10, 2022, Cruz received a three-day suspension from the CPL Mayfair Branch after he talked loudly on his phone and disturbed other patrons, despite three warnings from Lacey. He then recorded staff and security with his tablet in violation of CPL guidelines. Berg verbally notified Cruz of the suspension and told him that he would be trespassing if he returned during that time.

¶ 12    Cruz left but attempted to re-enter the building through the front door. Security physically prevented Cruz from reentering. Cruz's 3-day suspension was increased to 30 days because he attempted to re-enter the facility while suspended. An incident report dated June 10, 2022, reflects Cruz's suspension for causing a disturbance by using " 'loud, abusive, or profane language,' " violating the photography policy, harassing library users and staff, and engaging in disruptive or unsafe behavior.

¶ 13    Berg also told the IDHR that on June 14, 2022, Cruz entered the building. Both Lacey and Berg told him he was suspended. Cruz told Lacey that " 'he can go wherever he wants' " and walked to the computer room. Cruz used his tablet to film Lacey and all patrons and staff present in the room in violation of library policy. Berg called the police, who instructed Cruz to leave

and handed him a 30-day suspension notice and copy of CPL's guidelines. CPL submitted to the IDHR two incident reports documenting the June 14, 2022, incident.

¶ 14    Berg told the IDHR that she only considered Cruz's behavior and violation of CPL's policies, and not his protected categories. Berg had issued 30-day suspensions to other patrons, asked them to leave, and disallowed their use of the facility during their suspensions. She provided incident reports for other patrons showing incidents in which patrons were removed from the facility for various behaviors, including refusing to wear a mask and yelling at staff, using foul language toward a security officer and another patron, and returning to the facility after being barred from entry.

¶ 15    In rebuttal, Cruz denied that he had violated CPL guidelines and maintained that he walked outside when he accepted a longer phone call. He admitted that, on June 14, 2022, he refused to leave and recorded video despite being told that doing so violated CPL guidelines. However, he denied that he had an active suspension on that date, that he was informed about a suspension, or that he attempted to reenter CPL's facility while under suspension.

¶ 16    The investigator recommended a finding of lack of substantial evidence on all counts. The investigation revealed that, on June 14, 2022, Cruz violated CPL guidelines by refusing to cooperate with staff's instruction to leave the facility and by continuing to record footage of staff after being notified it violated guidelines. The investigator concluded there was no evidence of a nexus between Cruz's protected categories and CPL's decision to remove him from the premises. The investigation also did not show that CPL's reason for removing Cruz from the premises— *i.e.*, Cruz's violations of CPL guidelines—was a pretext to remove Cruz from the premises based

on his protected categories. Cruz was also unable to identify any patrons of different protected categories whom CPL treated more favorably under similar circumstances.

¶ 17    On August 28, 2023, the IDHR accepted the investigator's recommendations and dismissed Cruz's charge for lack of substantial evidence.

¶ 18    On November 29, 2023, Cruz filed a request for review with the Commission. He denied taking photographs of other patrons on June 14, 2022, and claimed there were no patrons in the computer lab. He claimed he had only answered his smartphone for 10 to 15 seconds and went outside to continue his conversation. He denied having an active suspension as of June 14, 2022, from the CPL Mayfair Branch when he entered the library on that date. Cruz argued that the IDHR erred in dismissing his charge, as he presented substantial evidence showing Berg and Lacey provided "false statements" during the fact-finding conference.

¶ 19    Cruz provided a number of exhibits, including his charge, the IDHR's investigation report, and email exchanges between him and the IDHR regarding his charge and the fact-finding conference. He also provided a notice of violation of CPL guidelines issued on June 14, a sheet of paper with two URLs on it purporting to contain "prima facie evidence," and what appears to be screenshots from one or more video files being played on a computer.

¶ 20    The IDHR filed a response to Cruz's request for review. The IDHR reiterated that its investigation did not reveal substantial evidence supporting Cruz's charge and stated that Cruz did not present any additional evidence warranting a reversal of the IDHR's original determination.

¶ 21    On January 17, 2024, the Commission entered a final order sustaining the IDHR's dismissal for lack of substantial evidence. The Commission found that Cruz failed to identify

similarly situated persons outside his protected class who had not been suspended from CPL's facility under similar circumstances. The Commission also noted that citizenship status is not a protected class in public accommodation claims under the Act.

¶ 22    Pursuant to section 8-111(B)(1) of the Act, Cruz timely filed a *pro se* petition for administrative review in this court. See 775 ILCS 5/8-111(B)(1) (West 2022); Ill. S. Ct. R. 335(a) (eff. July 1, 2017).

¶ 23    On appeal, Cruz seeks reversal of the Commission's decision sustaining the dismissal of his charge. We review the Commission's decision for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under the abuse of discretion standard, we will not reverse the Commission's decision unless it is arbitrary or capricious, meaning "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.* ¶ 33. We will not reweigh the evidence or substitute our judgment for that of the Commission. *Id.*

¶ 24    Cruz argues that the Commission failed to (i) "properly review" the exhibits attached to his request for review, (ii) "procedurally follow and review" his request for review as provided under the Act and the administrative code, and (iii) "properly review the *prima facie* evidence and material facts" in his complaint and request for review. Cruz does not develop any cognizable substantive argument supported by relevant authority addressing the basis for the dismissal: his failure to set forth a *prima facie* case of discrimination by identifying a single person of a non-protected class who received more favorable treatment under similar circumstances. Cruz's failure to set forth any cognizable and developed substantive argument

could serve as a basis to find his claims of error forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). However, we will put aside forfeiture and consider the merits of the appeal, as it is clear that Cruz is challenging the dismissal of his charge, and we have the benefit of cogent response briefs. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (finding meaningful review was not precluded where merits of appeal could be readily ascertained from record).

¶ 25    Under the Act, the IDHR conducts an investigation and may dismiss a charge of discrimination upon a determination that there is no "substantial evidence" supporting the charge. 775 ILCS 5/7A-102(C), (D)(3) (West 2022). The Act defines "substantial evidence" as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance" of proof. 775 ILCS 5/7A-102(D)(2) (West 2022). "[M]ere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

¶ 26    A complainant may seek review of the IDHR's dismissal of the charge by filing a request for review with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2022). During its review, the Commission "may consider the [IDHR's] report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the [IDHR] in response to the request." 775 ILCS 5/8-103(B) (West 2022). Where the Commission sustains the dismissal, the complainant may, as here, seek direct appellate review of the Commission's final determination. 775 ILCS 5/8-111(B)(1) (West 2022).

¶ 27    A complainant may prove discrimination by presenting direct evidence of discrimination, such as proof of a racial slur or a written or oral admission, or through indirect evidence. *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Here, there was no direct evidence of discrimination, so Cruz was required to establish unlawful discrimination through indirect evidence. To show indirect evidence of discrimination, the complainant bears the initial burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 28    Cruz asserted discrimination premised on the denial of full and equal enjoyment of the CPL Mayfair Branch's facility. Section 5-102(A) of the Act provides that it is a civil rights violation for any person, on the basis of unlawful discrimination, to "[d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2022). A library constitutes a public place of accommodation under the Act. *Id.* § 5-101(A)(9).

¶ 29    The Act defines "unlawful discrimination," in relevant part, as discrimination against a person because of his actual or perceived race, ancestry, national origin, military status, and color. *Id.* § 1-103(Q). To establish a *prima facie* case of discrimination in public accommodation, a complainant must show (1) "he is a member of a protected class"; (2) "he attempted to exercise the right to full benefits and enjoyment of a place of public accommodation"; (3) "he was denied those benefits and enjoyment"; and (4) "he was treated less favorably than similarly situated persons outside his protected class." (Internal quotation marks omitted.) *Dunn v. Human Rights Comm'n*, 2022 IL App (1st) 211155-U, ¶ 34 (unpublished order under Supreme Court Rule 23).

¶ 30 The Commission did not abuse its discretion in finding that Cruz failed to establish a *prima facie* case of unlawful discrimination. As an initial matter, the Act does not recognize citizenship status as a protected class for purposes of a public accommodation claim under the Act. See 775 ILCS 5/1-103(Q) (West 2022). Thus, Cruz's count alleging discrimination based on citizenship status was properly dismissed on that ground.

¶ 31 During the IDHR's investigation, Cruz acknowledged that he was asked to leave the library and recorded video of library staff after being told doing so violated CPL guidelines. He claimed that other patrons at the library were not suspended under similar circumstances. But as the Commission noted, Cruz failed to identify any specific patrons outside the protected classes of which he was a member who were treated more favorably. Because Cruz did not establish that he was "treated less favorably than similarly situated persons outside his protected class," the Commission properly determined that he failed to establish a *prima facie* case of unlawful discrimination. (Internal quotation marks omitted.) *Dunn*, 2022 IL App (1st) 211155-U, ¶ 34. We therefore find that the Commission's final order sustaining the IDHR's dismissal of Cruz's charge for lack of substantial evidence was not an abuse of discretion.

¶ 32 Cruz claims the Commission failed to properly review the exhibits attached to his request for review and the "*prima facie* evidence and material facts," and likewise failed to follow the "administrative procedure" of the Act and administrative code. However, Cruz's vague, speculative, and undeveloped allegations are not enough to overcome the Commission's finding that the IDHR's investigation did not reveal "substantial evidence" supporting his charge. See *Folbert*, 303 Ill. App. 3d at 25. We note that Cruz submitted documents as an appendix in this court that are not included in the record on appeal, but we cannot consider facts and evidence not

presented to the Commission. See 735 ILCS 5/3-110 (West 2022) ("No new or additional evidence in support of or in opposition to any finding, order, determination, or decision of the administrative agency shall be heard by the court.").

¶ 33    For these reasons, this court could not possibly find that the Commission acted in an arbitrary or capricious manner in upholding the IDHR's dismissal for lack of substantial evidence. We affirm the Commission's final decision.

¶ 34    Affirmed.