2025 IL App (1st) 240651-U

No. 1-24-0651

Order filed March 7, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JERICO MATIAS CRUZ, | ) | Petition for Direct Review of an |
| | ) | Order of the Illinois Human |
| Petitioner-Appellant, | ) | Rights Commission |
| | ) | |
| v. | ) | |
| | ) | Charge No. 2022 CP 2304 |
| THE STATE OF ILLINOIS HUMAN RIGHTS | ) | |
| COMMISSION, THE STATE OF ILLINOIS | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and FIFTH | ) | |
| THIRD BANK, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mikva and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The Illinois Human Rights Commission did not abuse its discretion in upholding the dismissal of petitioner's charge for lack of substantial evidence of discrimination.

¶ 2     Petitioner Jerico Matias Cruz filed a charge of discrimination with the Illinois Department

of Human Rights (IDHR) pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et*

*seq.* (West 2022)). The charge alleged that Fifth Third Bank (Bank) discriminated against him based on race, ancestry, national origin, military status, citizenship status, and color. The IDHR dismissed the charge for lack of substantial evidence. Cruz requested a review with the Illinois Human Rights Commission (Commission), which sustained the finding. Cruz filed *pro se* a direct appeal with this Court. We affirm.

¶ 3    On June 25, 2022, Cruz filed a charge with the IDHR and perfected it on January 29, 2023. In the charge, he alleged that he was discriminated against by the Bank located on Western Avenue in Chicago, where he was denied full and equal enjoyment of the Bank's facility based on his race (Asian), ancestry (Filipino), national origin (Philippines), military status (U.S. armed forces veteran), citizenship status (U.S. citizen), and color (light-complexioned). For all these claims, Cruz alleged that on June 24, 2022, he was qualified to receive the benefits of the Bank's facility but denied the full and equal enjoyment it when the manager called the police on him. He further alleged that the Bank treated similarly situated patrons who were not from the Philippines, Asian, Filipino, a U.S. armed forces veteran, a U.S. citizen, and light complexioned differently under similar circumstances.[1]

¶ 4    The IDHR investigated Cruz's charge and prepared a report dated September 12, 2023. As part of its investigation, the IDHR interviewed Cruz and Bank employees, including managers Joni McCarthy and Hilary Gargo, personal banker Dina De La Cruz, assistant vice president Alan Friendlander, and security operator Jeremy Smith. We summarize the evidence obtained through the investigation.

---

[1] Cruz listed himself as light-complexioned in the charge, but identified himself as dark colored during the investigation.

¶ 5    Cruz told the investigator that he had never been to the Western Avenue location of the Bank prior to September 12, 2023, but he previously had documents notarized at a different location. He alleged that the Bank was aware of his race, ancestry, and national origin, because the employee he interacted with was also Filipino, and "Filipinos know just by the way they look and last name." Cruz did not disclose his race, ancestry, or national origin to anyone at the Bank. He asserted that the Bank was aware of his citizenship status and military status because he presented the employee with his driver's license, which identified him as a veteran.

¶ 6    Cruz stated that the "terms and conditions" he signed when he opened his account with the Bank included notary services. On June 24, 2022, he entered the Bank's Western Avenue location to have 100 petitions notarized to be able to put his name on the general election ballot in 2023. Cruz interacted with De La Cruz, who informed him that she was able to notarize "no more than four pieces of paper." Cruz requested to speak with the branch manager. McCarthy then came over and reiterated what De La Cruz told him.

¶ 7    Cruz told McCarthy that he was not leaving the Bank until he received the notary services, and that the refusal to notarize his petitions was a "breach of contract." McCarthy asked Cruz to leave the facility. He then asked to speak to the person above McCarthy, and Friendlander came over. Cruz briefly spoke with Friendlander before the police arrived. The police informed Cruz that if he did not leave, he would be trespassing and arrested. Cruz decided to leave on his own.

¶ 8    Cruz did not know of other customers who were able or unable to have documents notarized at the Bank's Western Avenue location. He also did not know of any other customers who the Bank "called the police about." Cruz continued to use the Bank at a different location.

¶ 9    On behalf of the Bank, Gargo stated that Bank policies prohibit discrimination based on race, ethnicity, color, national origin, ancestry, citizenship status, military status, or any other federally or state protected class. The Bank provides notary services to customers, and there are no company policies restricting the number of documents a customer may have notarized.

¶ 10    According to De La Cruz, Cruz wanted notary services for three boxes of documents, which she informed him were too many documents. She consulted with McCarthy, who instructed her to inform Cruz that she could only notarize a few of his documents at a time. Cruz was "not happy" and requested to speak with De La Cruz's manager.

¶ 11    McCarthy spoke with Cruz, informing him again that the Bank could not notarize all his documents, but suggested that he go to the United Postal Service to get all of his documents notarized. Cruz became upset and asked if she was refusing him for political reasons. McCarthy replied that she did not know anything about his politics. She explained that she did not have enough staff to accommodate his request, as De La Cruz was the only notary available at that time. McCarthy then walked away. Cruz remained seated at De La Cruz's desk, "stared at her for a while," and started to eat food. De La Cruz informed McCarthy that Cruz refused to leave.

¶ 12    McCarthy returned to speak with Cruz and asked him if the Bank could help him with anything else. Cruz did not respond and "just stared at her." She asked Cruz to leave, and he "just stared at her." McCarthy returned to her office and called corporate security, speaking with Smith, who called the police. After learning about the situation, Friendlander spoke with Cruz, informing him that there were too many documents to be notarized. The police arrived soon thereafter, spoke with Cruz, and escorted him out.

¶ 13    McCarthy informed the investigator that Cruz was not banned from the location. There had not been any other customer who was denied notary services under similar circumstances. She also stated that this was the first time a customer had requested notary services for such a large volume of documents at that location. She further stated that there have not been any similar incidents at that location. McCarthy was not aware of Cruz's race, ancestry, national origin, military status, or color. The Bank does not track citizenship status, but all individuals seeking to open an account must answer a question regarding citizenship status.

¶ 14    In rebuttal, Cruz confirmed that he did eat at De La Cruz's desk while waiting for notary services. He was not upset. Cruz also confirmed that he had three small boxes with him, which were about 1.5 inches deep.

¶ 15    The investigator recommended a finding of a lack of substantial evidence on all counts. Specifically, the investigator noted that the Bank offered notary services but contended that it did not have sufficient staffing to accommodate Cruz's request. It did offer to notarize some of his documents. The Bank's security contacted the police because Cruz refused to leave. The investigator noted that even if Cruz believed the Bank should have notarized all of his documents, he failed to identify a similarly situated customer who was treated more favorably under similar circumstances or otherwise provide evidence of a pretext. The investigator found no evidence of an animus based on race, ancestry, national origin, military status, citizenship status, and color.

¶ 16    On September 13, 2023, the IDHR accepted the investigator's recommendations and dismissed Cruz's charge for lack of substantial evidence.

¶ 17    Cruz requested the Commission review the dismissal of his charge. In his request for review, Cruz attached documentary exhibits, including emails between himself and the IDHR

investigator, an annotated copy of the IDHR's findings, a FOIA request for the police report from the incident, and statistics of the November 8, 2022, congressional election.

¶ 18    On February 14, 2024, the Commission issued a final order sustaining the dismissal for lack of substantial evidence. The Commission found that Cruz failed to identify similarly situated persons outside his protected class who did not have police called on them when they refused to leave the Bank. The Commission also noted that citizenship status is not a protected class for public accommodation claims under the Act.

¶ 19    On appeal, Cruz seeks reversal of the Commission's decision sustaining the dismissal of his charge.

¶ 20    As a preliminary matter, we agree with the Commission that Cruz arguably forfeited review of the Commission's decision on the merits. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires a brief to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The Rule further provides that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *Id*.

¶ 21    On appeal, Cruz argues that the Commission failed to properly review the exhibits attached to his request for review and "the *prima facie* evidence and material facts" presented in his complaint and request for review. He also contends the Commission failed to "procedurally follow and review" his request for review as provided for under the Act and the administrative code, However, Cruz does not develop a cognizable argument, supported by relevant authority, addressing the basis for the dismissal of his charge, *i.e.*, that he failed to establish a *prima facie* case of discrimination. Nevertheless, as the issues are not complex and we have the benefit of the

brief filed on behalf of the Commission and Department, we consider the merits of his appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (finding meaningful review was not precluded, as merits of appeal could be ascertained from record).

¶ 22    When, as here, a charge alleging a civil rights violation under the Act is filed, the IDHR must investigate the allegations and may dismiss a charge upon a determination that there is no "substantial evidence" supporting the charge. 775 ILCS 5/7A-102(C), (D)(3) (West 2022). "[S]ubstantial evidence" is defined as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2022). "[M]ere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

¶ 23    Following a dismissal, the complainant may request the Commission's review of the dismissal. 775 ILCS 5/7A-102(D)(3) (West 2022). If the Commission sustains the dismissal, the complainant may seek review of the Commission's order directly in this court. 775 ILCS 5/8-111(B)(1) (West 2022).

¶ 24    This court reviews the decision of the Commission, not the IDHR. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). We review the Commission's decision for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. We reverse a dismissal sustained by the Commission only where the decision was arbitrary or capricious. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). A decision is arbitrary or capricious where "it contravenes legislative intent, fails to consider a critical aspect

of the matter, or offer[s] an explanation so implausible that it cannot be considered as the result of an exercise of the agency's expertise." *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 25    Section 5-102(A) of the Act states that a civil rights violation occurs when a person, on the basis of unlawful discrimination, denies or refuses to another person "the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2022). Unlawful discrimination includes discrimination on the basis of, among other factors: race, color, national origin, ancestry, and military status. 775 ILCS 5/1-103(Q) (West 2022). A bank is considered a place of public accommodation. See 775 ILCS 5/5-101(A)(6) (West 2022).

¶ 26    A complainant may prove discrimination by presenting direct evidence of discrimination, such as proof of a racial slur or a written or oral admission, or through indirect evidence. *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Because there was no direct evidence of discrimination, Cruz needed to establish unlawful discrimination through indirect evidence.

¶ 27    To show indirect evidence of discrimination, the complainant bears the initial burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34. To establish a *prima facie* case of discrimination in public accommodation, a complainant must show that he (1) is a member of a protected class, (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation, (3) was denied those benefits and enjoyment, and (4) was treated less favorably than similarly

situated persons outside his protected class. *Dunn v. Human Rights Comm'n*, 2022 IL App (1st) 211155-U, ¶ 34.[2]

¶ 28     At the outset, the Commission did not abuse its discretion in dismissing the charge of discrimination based on citizenship status, as this is not a protected class in public accommodation claims under the Act. See 775 ILCS 5/2-101(K) (West 2022) (citizenship status is only protected under Article 2 of the Act which covers employment).

¶ 29     We further find that Cruz failed to establish a *prima facie* case of unlawful discrimination premised on the denial of full and equal enjoyment of the Bank's facility on the basis of race, ancestry, national origin, military status, citizenship status, and color. Cruz claimed that the Bank called the police after he refused to leave when the Bank refused to notarize all the in his boxes. However, Cruz stated that he did not know of other customers of the Bank who were denied notary services or of other customers who had the police called on them when they refused to leave the Bank. Also, he made no mention of any customers who were not reported to the police when they refused to leave. Thus, Cruz was unable to establish that he was "treated less favorably than similarly situated persons outside his protected class," and the Commission properly determined that he failed to establish a *prima facie* case of unlawful discrimination. (Internal quotation marks omitted.) *Dunn*, 2022 IL App (1st) 211155-U, ¶ 34. As a result, we find that the Commission's final order sustaining the IDHR's dismissal of his discrimination charge for lack of substantial evidence was not an abuse of discretion.

---

[2] Cited as persuasive authority under Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered under Rule 23(b) on or after January 1, 2021, may be cited for persuasive purposes).

¶ 30    Nonetheless, Cruz contends that the Commission failed to properly review the exhibits attached to his request for review, follow review procedures provided under the Act and Title 56 of the Illinois Administrative Code, and review the "*prima facie* evidence and material facts." However, Cruz's allegations are insufficient to overcome the Commission's finding that the IDHR's investigation did not reveal "substantial evidence" supporting his charge. See *Folbert*, 303 Ill. App. 3d at 25. We also note that Cruz submitted documents as appendices in this court that are not included in the record on appeal, but we cannot consider facts and evidence not presented to the Commission. 735 ILCS 5/3-110 (West 2022) ("No new or additional evidence in support of or in opposition to any finding, order, determination, or decision of the administrative agency shall be heard by the court.").

¶ 31    For the foregoing reasons, the final order of the Commission is affirmed.

¶ 32    Affirmed.